**Charles L. HOPPER, Larry L. Wheeler, and Joe Scalf, Appellants,**

v.

**STATE of Indiana, Appellee.**

**No. 983S346.**

Supreme Court of Indiana.

March 5, 1985.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellants were sentenced on six separate counts: Criminal Confinement, Criminal Confinement While Armed with a Deadly Weapon, Conspiracy to Commit Criminal Confinement, two Counts of Attempted Theft and Conspiracy to Commit Kidnapping. Appellants were acquitted on one count of kidnapping. Appellants received thirty (30) years imprisonment on the Conspiracy to Kidnap conviction. The court also sentenced the appellants to various lesser sentences to run concurrently on the other convictions.

The facts are: Alice McIntosh contacted the Indiana State Police with information concerning a series of cattle thefts in Crawford County. McIntosh was privy to this information through her contacts with Lloyd Chadwell and Jerry White. It was through these men she met the appellants. With the knowledge of the police, she convinced the appellants she was interested in acquiring stolen cattle. Appellants, White and McIntosh discussed various plans to steal cattle from either a stockyard or from a stock hauling truck. They set out on numerous occasions to carry out these plans; however, they were thwarted by circumstances beyond their control.

On February 22, 1982, McIntosh informed the police an attempt would be made the next day to steal cattle from a truck as it was parked at a rest stop. The police were told the target was a truck driven by John Hampton for the Finchum Trucking Company. The police contacted these parties and secured their cooperation. The police placed two officers in the sleeper cab of the truck. One, Officer Lewis, was dressed to resemble Hampton. The police also placed a body microphone on McIntosh and a tracer on her car.

Appellants' plan for the night in question was as follows. When the driver took his usual break at the rest stop, McIntosh was to lure him from the truck to her car. While the driver was at the McIntosh automobile, Hopper and Wheeler were to accost him and take him to their car. Meanwhile others were to gain control of the truck

and to drive it away. The cattle were then to be unloaded and the truck abandoned.

To carry out this mission, appellants, White and McIntosh drove three cars to the stockyard at Louisville. They observed the truck being loaded with cattle and its departure. They then followed the truck as it drove through southern Indiana.

When Hampton pulled into a rest stop, as was his customary routine, he slowed the truck to the point he could slide from behind the wheel and permit Lewis to take his place. Lewis parked the truck and then laid across the seat as if taking a nap. McIntosh parked her car near the truck and raised the hood feigning car trouble.

McIntosh, as she was instructed, approached the truck seeking assistance. McIntosh spoke with Lewis. She told him to accompany her to her car and pretend to work on it until appellants approached him. Lewis did so and soon appellants Wheeler and Hopper left their car and walked toward Lewis. They placed their hands on Lewis and demanded that he go with them. Lewis resisted to the point appellants were required to use force to get Lewis to the car. When they reached the car, the door was opened and Lewis was forced partially into the car. He saw appellant Scalf inside the car.

At that time other police officers, who were in various locations about the rest park, interceded and appellants were arrested. At the police station, following the arrest, the police confiscated a small handgun from the jacket of appellant Hopper.

▆▆ Appellants first argue and the State concedes it was improper to sentence appellants on both the conviction for Criminal Confinement and Criminal Confinement with a Deadly Weapon. There was but one confinement and both convictions flowed from that offense. It is improper to twice sentence for the same offense in a single proceeding. *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. The two-year concurrent sentence for Criminal Confinement is thus vacated.

Appellants' next issue deals with the various jury instructions tendered by appellants but rejected by the trial court. We first note these instructions were not signed by appellants' counsel as required by Ind.Code § 35-37-2-2(6) (West 1984 Supp.). We have held the failure to strictly comply with the statute is grounds for waiver of any alleged error in refusing to give the tendered instruction. *Harding v. State* (1984), Ind., 457 N.E.2d 1098; *Askew v. State* (1982), Ind., 439 N.E.2d 1350. Appellants acknowledge these holdings; however, they contend the statute is in direct conflict with Ind.R.Cr.P. 8(D). The rule provides:

"The instructions will be deemed to be sufficiently identified as having been tendered by the parties or submitted by the court if it appears in the record from an order book entry, bill of exceptions, or otherwise, by whom the same were tendered or submitted."

Appellants assert that when a statute is in conflict with a procedural rule of the court, the rule will prevail. *See State ex rel. Gaston v. The Gibson Circuit Court* (1984), Ind., 462 N.E.2d 1049. Appellants contend a conflict does exist in the case at bar. We do not agree.

The rule and the statute are not in conflict. To be in compliance with the statute does not require one to violate the rule. While the demands of the statute are more specific than the rule, the statute merely codifies what has been the accepted and required practices under the rule. *See Askew, supra* for a brief review of the case law requiring the signing and numbering of tendered instructions.

We find no conflict between the rule and the statute and thus no reason to apply the *Gaston* rule. Appellants failure to sign the tendered instructions constituted a waiver of alleged error relating to those instructions.

Appellants next contend the trial court erred when it permitted the gun recovered from Hopper to be admitted into evidence. The gun was admitted during the testimony of Officer Cutrell. Cutrell was the officer who searched Hopper following his arrest. A two-shot derringer was found in Hopper's jacket pocket. Cutrell admitted none of the customary identification procedures were performed. No marking tags or initials were placed on the gun. Officer Cutrell testified, in his opinion, the gun offered into evidence was the same gun recovered on the evening of the incident. Cutrell indicated the gun recovered had a white grip and the number 66 on the side.

Cutrell was asked the following questions on cross-examination:

"Q. How do you know, Mr. Cutrell or Officer Cutrell, that this is the hand gun you took up?

A. I can remember and from looking at it, it has the number 66 on the left side of it. It has white grips like the one that I took. It is chrome plated. I have never seen a hand gun like that before or since then.

Q. It appears to be the same hand gun is what you are saying?

A. Yes, it does.

Q. And you say definitely it is the same gun?

A. To my knowledge it is, yes.

Q. Now there is a big difference, Mr. or Officer Cutrell, is it or does it appear to be?

A. It is my opinion that that is the same hand gun."

Defense counsel then indicated he believed the number on the side of the gun was 55; however, he submitted no proof as to the correct number nor did he make objection on that basis. His attempt to raise that question now is not supported by the record.

An item of physical evidence may be properly admitted as evidence despite the inability of the witness to state for certain the object being shown and the object about which he is testifying are indeed the same object connected with the crime. *Jordan v. State* (1982), Ind., 432 N.E.2d 9. Such considerations go only to

the weight of the evidence and not to its admissibility. *Id.* In the case at bar the gun was sufficiently identified to permit its introduction into evidence.

█ Appellants next allege the guilty verdict on the Conspiracy to Commit Kidnapping is inconsistent with the acquittal on the charge of Kidnapping. Appellants acknowledge the concept that an acquittal on the substantive charge is not a bar to a conviction for conspiracy to commit that same crime. *See Weekley v. State* (1981), Ind.App., 415 N.E.2d 152. Appellants contend this case is illustrative of one of the exceptions to the general principle which was outlined in *Weekley.* The exception cited exists when the necessary proof of the substantive charge is identical with that required on the conspiracy charge. The *Weekley* court then cited 16 Am.Jur.2d Conspiracy § 37 (1979):

"Where the substantive offense is the overt act necessary to sustain conviction on the conspiracy count, an acquittal of the substantive offense operates as an acquittal of the conspiracy count, if the acquittal of the substantive offense constitutes a determination that the overt act was not committed." *Id.* at 157.

In the case at bar the Information alleging Kidnapping set out a series of events, which taken together, constituted the elements of kidnapping. The jury acquitted appellants on this Information. The Information alleging Conspiracy to Kidnap stated:

"COUNT V: On or about the 23rd day of February, 1982, in Spencer County, State of Indiana, Charles L. Hooper, Joe Scalf and Larry L. Wheeler did agree with Jerry W. White and Robert McFarland and among each other for the object and purpose and with the intent to commit a felony, to-wit: Kidnapping, and in furtherance of the agreement, said Charles L. Hooper, Joe Scalf and Larry L. Wheeler did perform an overt act, to-wit: ...."

The Information then listed the acts listed in the Kidnapping Information. Appellants now contend they were acquitted on the identical substantive charge which serves as the overt act in furtherance of the agreement. The State argues any of the acts listed in the series of acts may serve as the overt act in furtherance of the agreement. Appellants maintain in response the State may not be permitted to, at this point, amend the Information to allege the occurrence of any one of several acts but rather must offer proof of the occurance of an act consisting of several events as stated in the Information.

█ We first note that a showing of any one of the events listed in the series would have been sufficient to support the Conspiracy conviction. The phrase in the Information "an overt act, to-wit:" might, in some cases, be followed by language describing a single event. In the case at bar this was not the situation. The jury was instructed the State must allege and prove an overt act. It is reasonable to conclude the jury found one or more of the events in the list was proven beyond a reasonable doubt. We find no reversible error.

Appellants next claim the verdict is not sustained by sufficient evidence. This Court does not reweigh the evidence nor judge the credibility of witnesses. When there is substantial evidence of probative value to support the conviction, the finding of the trier of fact will not be disturbed. *Staton v. State* (1981), Ind., 428 N.E.2d 1203; *Rowan v. State* (1982), Ind., 431 N.E.2d 805.

Appellants were charged under Count II with a violation of Ind.Code § 35-42-3-3 (West 1984 Supp.) which provides:

"A person who knowingly or intentionally:

(1) confines another person without his consent; or

(2) removes another person, by fraud, enticement, force, or threat of force, from one place to another;

commits criminal confinement, a Class D felony. However, the offense is a Class C felony if the other person is under fourteen (14) years of age and is not his

child, and a Class B felony if it is committed while armed with a deadly weapon or results in serious bodily injury to another person."

The statute encompasses two separate crimes; viz, confinement and removal. *See Addis v. State* (1980), Ind.App., 404 N.E.2d 59. Further, the court found it would be reversible error to render a guilty verdict based upon a charge as to one section when proof was offered only to the other. Appellants maintain this is precisely the situation in the case at bar. They argue they were charged under subsection (1) the non-consensual confinement section, while all evidence presented dealt with the removal of Lewis from one place to another, a subsection (2) crime.

We do not agree. The Information provided:

"*Count II:* On or about the 23rd day of February, 1982, in Spencer County, State of Indiana, Charles L. Hopper, Larry L. Wheeler and Joe Scalf did knowingly confine Tommy R. Lewis without his consent by enticing said Tommy R. Lewis from a 1979 Peterbilt semi-tractor/trailer and pushing said Tommy R. Lewis into the back seat of a 1979 green four-door Pontiac automobile occupied by said Charles L. Hopper, Larry L. Wheeler and Joe Scalf and owned by Larry L. Wheeler while armed with a deadly weapon, being a loaded gun held in the hand of Charles L. Hopper.

"All of which is contrary to the form of the statute in such càses made and provided, to-wit: Ind.Code § 35-42-3-3(a)(1), and against the peace and dignity of the State of Indiana."

■ The Information thus alleged a non-consensual confinement as proscribed by subsection (1) of the statute and a removal as proscribed by subsection (2) of the statute. The jury in the case at bar was presented with evidence of confinement as well as evidence of removal. We hold sufficient evidence of probative value was admitted to support the verdict.

■ Appellants next contend there was a lack of evidence to support the convictions on the charges of Conspiracy to Commit Confinement and Conspiracy to Commit Kidnapping. This argument is premised upon the prior argument that Lewis was not confined within the meaning of that term in the kidnapping and confinement statutes. Having found there was evidence of confinement, we find there was evidence to support the verdicts on the two conspiracy allegations. However, as later set out, these two charges merged.

Appellants contend there was a lack of evidence to support the conclusion Officer Lewis was confined without his consent, as required by the statute. Appellants cite to the cross-examination testimony of Lewis. In that testimony Lewis indicated he knew of the details of the plans prior to the incident. Lewis testified McIntosh relayed the plans the night before the incident. McIntosh then reconfirmed the plan as she and Lewis talked prior to their walk to the McIntosh automobile.

Lewis testified many policemen were stationed in various locations within the rest park. Lewis himself was armed. He further testified that he could have stopped the incident at any time. Appellants maintain that all these factors taken together reveal Lewis willingly went along with the events and thus he consented to the events. Appellants maintain a material element of confinement, a lack of consent, was not shown by the evidence.

■ We do not agree. "One who knows of a crime contemplated against himself may remain silent and permit matters to go on, for the purpose of apprehending a criminal, without being held to have assented to the act." 21 Am.Jur.2d Criminal Law § 189 (1981). To follow the concept advocated by appellants would eliminate most police undercover operations. The trier of fact had ample evidence to conclude Officer Lewis did not consent to his confinement.

Appellants next maintain there was a lack of sufficient evidence to demonstrate the confinement was accomplished with the

use of a deadly weapon. The use of a deadly weapon elevates the crime from a Class D felony to a Class B felony. A weapon was found in the jacket of appellant Hopper shortly after the incident. McIntosh testified she observed Hopper with the gun in his hand during the incident. Other witnesses testified they did not observe the gun.

The fact evidence is in conflict does not require a finding of lack of evidence. The jury was free to believe whomever it chose in fulfilling its fact finding function. *Collins v. State* (1981), Ind., 429 N.E.2d 623. The uncorroborated testimony of one witness is sufficient to support the finding of the trier of fact. *Collins v. State* (1983), Ind., 453 N.E.2d 980; *Lawhorn v. State* (1983), Ind., 452 N.E.2d 915. We hold sufficient evidence was presented to support the finding that Officer Lewis was confined by the appellants who were armed with a deadly weapon.

Appellants contend there was a lack of sufficient evidence to support the verdict on the charge of Attempted Theft. Appellants suggest the evidence points to attempted conversion and not attempted theft. Ind.Code § 35–43–4–2 provides:

"A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony. As added by Acts 1976, P.L. 148, SEC. 3. Amended by Acts 1977, P.L. 340, SEC. 45."

The Information alleged the attempted theft of the semi-truck and trailer. Appellants argue the plan was to only take the truck for the short time necessary to remove the cattle. The truck was then to be abandoned. Thus they contend there was no intent to deprive the trucking company of the use or value of the truck.

We do not agree. The evidence adduced at trial indicated the plan was to drive the truck to another location where the cattle would be unloaded. The jury was free to conclude the appellants intended to deprive the company of the use of its truck. There was sufficient evidence to support the verdict on the Attempted Theft allegation.

Appellants next allege alternative grounds for finding a lack of sufficient evidence in the allegation of a Conspiracy to Commit Kidnapping and a Conspiracy to Commit Confinement. Appellants maintain that if an agreement existed it was to kidnap and confine John Hampton the regular driver of that truck and not Officer Lewis as stated in the Information. They cite to considerable testimony which dealt with the formulation of the plan to hijack the specific truck driven by John Hampton. While the planning did discuss John Hampton's truck, it is clear the emphasis was on the acquisition of a truckload of cattle.

The State argues the focus should be on the agreement to confine the truck driver and not on the specific identity of that person. We agree. The Information clearly indicates the agreement is to commit the acts of kidnapping and confinement. It is only when the Information discusses the acts done in furtherance of the plan that the identity of the victim becomes an issue. There was sufficient evidence of an agreement to commit the proscribed acts. We find no error.

Appellants argue there is a lack of evidence to demonstrate the appellants agreed to confine the driver through the use of a deadly weapon. McIntosh testified that on several prior occasions the group set out to steal cattle. She indicated that on these occasions the group was armed. She further indicated that on the night of the incident appellant Wheeler had a gun and that she saw a gun in the hand of appellant Hopper. This is sufficient evidence to support the jury conclusion that the appellants knowingly agreed to carry out their plan while armed with a deadly weapon.

Appellants next seek a review of their entrapment defense. Ind.Code § 35–41–3–9 explains the entrapment defense as follows:

"(a) It is a defense that:

(1) The prohibited conduct of the person was the product of a law-enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) The person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment."

Recently this Court discussed the appellate review of an entrapment claim. We said:

"When the defense of entrapment is raised, the successful prosecution of the case becomes dependent upon whether the State can prove that the prohibited conduct of the defendant was not the product of the efforts of the law enforcement officials involved or that the accused was predisposed to engage in such conduct. *Ryan v. State*, (1982), Ind., 431 N.E.2d 115; *Williams v. State*, (1980) [274] Ind. [578], 412 N.E.2d 1211. The standard of review in a case such as this, where the issue is whether there was sufficient evidence to support the conclusion that the defendant had a predisposition to commit these crimes, is the same as that for other sufficiency claims. *Voirol v. State*, (1980), Ind.App., 412 N.E.2d 861." *Mack v. State* (1983), Ind., 457 N.E.2d 200, 202.

 A review of the record reveals an abundance of evidence of the appellants' predisposition to commit these acts. We find no error.

Appellants lastly challenge the imposition of separate sentences on Conspiracy to Commit Kidnapping and Conspiracy to Commit Confinement. They contend they are being assessed double punishment for the same crime. They maintain there was but one agreement to commit one act. They cite *Ridgeway v. State* (1981), Ind. App., 422 N.E.2d 410.

The State also cites *Ridgeway* for the view that whether there was one or several conspiracies is a jury question.

However, when, as here, there is a charge of Kidnapping and a charge of Confinement, a conviction of the greater merges with the lesser. *Elmore v. State, supra*. Thus, this issue is resolved by the merger. The sentence for Conspiracy to Commit Confinement is set aside.

The two-year concurrent sentence for Criminal Confinement is hereby vacated.

The trial court is in all other things affirmed.

All Justices concur.