**Lowell K. IDLE, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 79A02–9010–CR–615.**

Court of Appeals of Indiana, Second District.

March 5, 1992.

Transfer Denied April 23, 1992.

class B felony, one count of Criminal Deviate Conduct While Armed with a Deadly Weapon,[2] a class A felony, and one count of Rape While Armed with a Deadly Weapon,[3] a class A felony. Upon appeal, Idle challenges the sentences imposed by the trial court asserting that they are manifestly unreasonable, and resulted from the trial court's failure to appropriately weigh mitigating factors.

We affirm in part, reverse in part, and remand.

In the early morning hours of November 1, 1988, Idle went to the house of S.K. with the intent to kill S.K.'s husband. Apparently, Idle hoped that S.K., who was his sister-in-law, would marry him after he killed her husband. H.S., S.K.'s eleven-year-old daughter, answered Idle's knock. When the door was opened, Idle pointed a sawed-off .22 caliber rifle at H.S. and she ran screaming into her mother's bedroom. Idle followed H.S. into S.K.'s bedroom, where he found S.K. in bed with L.S., her two-year-old daughter.

After shutting the door, Idle ordered H.S. to disrobe. S.K. responded that H.S. would not comply with his demand, whereupon Idle ordered both S.K. and H.S. to disrobe. S.K. then asked Idle to allow L.S. to get off of the bed, which he permitted. At this point, H.S. and L.S. went to a corner of the room and covered themselves with a blanket. S.K. then asked Idle about his conduct, to which he responded that he had always wanted S.K., and that he never wanted Sharon (Idle's wife and S.K.'s sister). He then forced S.K. to disrobe, laid the gun on the dresser, and performed cunnilingus upon her. After she refused his request to perform fellatio upon him, Idle raped S.K. After picking up his gun again, Idle allowed S.K. to get dressed. Thereafter, everyone went into the kitchen. After a brief discussion in the kitchen, Idle left the house and S.K. immediately locked the door behind him and called the police.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Ian A.T. McLean, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Upon a guilty plea, Lowell Idle (Idle) was convicted of three counts of Confinement While Armed with a Deadly Weapon,[1] a

---

1. I.C. 35–42–3–3 (Burns Code Ed.Supp.1991).

2. I.C. 35–42–4–2 (Burns Code Ed.1985).

3. I.C. 35–42–4–1 (Burns Code Ed.Supp.1991).

Following his plea, the trial court imposed the maximum 20–year sentence for each of the three convictions of Confinement, the three sentences to run concurrently, and it imposed the presumptive 30–year sentence for each of the sex-related offenses (Rape and Criminal Deviate Conduct), which also were to run concurrently. In addition, the court ordered that the three 20–year sentences were to run consecutive to the two 30–year sentences, for a total executed sentence of 50 years.

## I. *Sentencing*

A trial court has wide discretion in sentencing and upon review we do not set aside or alter a sentence that is within statutory limits unless the record reveals a manifest abuse of discretion. *Arthur v. State* (1986) Ind., 499 N.E.2d 746.

■ Idle contends that a pre-sentence report submitted to the court was improper because the preparer recommended the maximum sentence but did so without explaining the rationale. In effect, Idle's argument is that the trial court gave undue weight to the subjective viewpoint of the report preparer.

■ Even were we to accept Idle's assertion that the report's recommendation is without supporting rationale, Idle's argument is without merit. A trial court may consider relevant information when determining what sentence to impose. *Yates v. State* (1982) 3d Dist.Ind.App., 429 N.E.2d 992, 994. Although our legislature has mandated that a pre-sentence report must be filed prior to sentencing (I.C. 35–38–1–8 (Burns Code Ed.Supp.1991)), it has not legislated the weight which a judge must accord the report. The record here does not indicate how much weight the trial judge accorded the report, nor does it reflect what weight, if any, was given to the preparer's recommendation as opposed to the factual data contained in the report. Moreover, such weighing is included in the broad discretion granted to trial courts when sentencing. For this reason, the relevant inquiry regarding pre-sentence reports generally concerns their accuracy and, to that end, whether the defendant had an opportunity to examine the report

and challenge any inaccuracies, pursuant to I.C. 35–38–1–12(b) (Burns Code Ed.Supp. 1991).

In the instant case, Idle's sole substantial challenge at the sentencing hearing was to the report's assertion that his criminal history included an assault and battery charge, which was the only item listed in his criminal history. The trial court apparently accepted Idle's challenge, as indicated by the listing, as a mitigating factor, of Idle's long period of good behavior and apparent lack of prior criminal activity. Having found that the report was substantially accurate, that Idle had ample opportunity to challenge the report, and mindful of the broad discretion vested in the trial court's use of pre-sentence reports when sentencing, we discern no error regarding the trial court's use of the pre-sentence report.

■ Idle's remaining claims of error involve the trial court's identification and use of aggravating factors which supported the sentence enhancements and consecutive sentences. When a court imposes consecutive terms, the record must disclose articulated facts which support a finding of the presence of at least one of the aggravating circumstances listed in former I.C. 35–38–1–7(b) (Burns Code Ed.1985). *Brown v. State* (1986) Ind., 497 N.E.2d 1049. However, the statutory factors are not exclusive and the trial court may, in its discretion, consider other relevant factors. *Ballard v. State* (1988) Ind., 531 N.E.2d 196, 197. Following is the trial court's statement of aggravating and mitigating circumstances.

"Right, the Court will find as mitigating circumstances, ... apparently there was a long period of good behavior. We didn't find very many—many crimes were committed. In fact, according to what you said today, there were none prior to this that we could find. You served in Vietnam. Mentally ill, and I know that being mentally ill probably doesn't add or subtract from the seriousness of the crime. The aggravating circumstances, the extreme violence and the excessive use of alcohol and the use of

drugs. And you had [an] eleven-year-old girl to un-robe in your presence. And you raped their mother in the presence of the three-year-old and eleven-year-old girl. And you performed oral sex on the victim and raped her. And I believe the victim was your sister-in-law. And the intent with which you said that you went to that place was to commit murder. Those are the aggravating circumstances that the Court finds. Is there anything that I have omitted?" Record at 253–54.

In summary, the aggravators identified by the court were: 1) the extreme violence of the crime; 2) Idle's history of alcohol and drug abuse; 3) having H.S. disrobe in his presence; 4) committing the sex crimes in the children's presence; 5) performing cunnilingus on S.K. and raping her; 6) the fact that the victim was Idle's relative; and 7) Idle's intent to murder S.K.'s husband. Idle contends that the only proper aggravating factor was the children's presence, and that this was not sufficient to justify the enhanced and consecutive sentences.

■ The same single aggravating factor may support both the enhancement of a presumptive sentence and the imposition of consecutive sentences. *Davidson v. State* (1990) Ind., 558 N.E.2d 1077. Although the court cited a factor or factors which may not constitute valid aggravators, it also cited several, including the children's presence, which are valid. Having examined the record and reviewed the sentence, we conclude that the sentence enhancements and consecutive sentences were adequately supported by valid aggravating circumstances. Moreover, we cannot say that the sentences imposed by the court were obviously the result of its consideration of invalid aggravating circumstances.

## II. *Double Jeopardy*

■ We note *sua sponte* that Idle was convicted of two counts of Confinement in which H.S. was the victim. I.C. 35–42–3–3 defines Criminal Confinement as follows:

"**Criminal Confinement.**—A person who knowingly or intentionally:

(1) Confines another person without the other person's consent; or

(2) Removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another;

commits criminal confinement, a Class D felony. However, the offense is a Class C felony if the other person is less than fourteen (14) years of age and is not the person's child, and a Class B felony if it is committed while armed with a deadly weapon or results in serious bodily injury to another person."

In this case, the double jeopardy issue is implicated because Idle was convicted twice for one continuous act of confinement involving the same victim. In fact, at the guilty plea hearing, Idle expressed confusion that he was being convicted of two counts of confinement with H.S. as the victim, and expressed his belief that the two counts each charged him with the same criminal behavior; essentially, he believed he was being convicted twice for one crime. The State explained that the counts differed in that there are two separate types of confinement. In essence, the State explained at the hearing, and argues upon appeal, that Idle received two convictions because I.C. 35–42–3–3 defines two separate and distinct crimes of confinement, and he committed both: subsection one defines it as non-consensual restraint in one place; and subsection two defines it as removal from one place to another.

The double jeopardy prohibition flowing from the fifth amendment of the federal Constitution prohibits imposition of two punishments for a single offense arising from one set of operative circumstances. *Haggard v. State* (1983) Ind., 445 N.E.2d 969, 971 We must determine whether violation of both subsection one *and* subsection two in the same continuous act constitutes a single offense, or whether it constitutes multiple offenses, within the meaning of double jeopardy jurisprudence.

Cases have said that the violation of one subsection of our confinement statute would not be sufficient to show violation of the other. *See, e.g., Kelly v. State* (1989) Ind., 535 N.E.2d 140; *Addis v. State* (1980) 4th Dist.Ind.App., 404 N.E.2d 59, 61. To that extent the statute does define two

separate criminal activities. However, we have found no case which addresses the propriety of separate convictions under both subsections for activities occurring in a single episode. Our Supreme Court in *Kelly* used language which arguably could be interpreted to support such convictions:

> "It is evident that [I.C. 35–42–3–3], framed in the disjunctive, includes two distinct types of criminal confinement by encompassing both confinement by non-consensual restraint in place and confinement by removal." *Kelly, supra,* 535 N.E.2d at 140.

    \*     \*     \*     \*     \*     \*

> "The jury's general verdict indicates that they did find the defendant guilty of confinement, but does not indicate whether the conviction was based upon a violation of Ind.Code § 35–42–3–3(a)(1), non-consensual confinement, as charged in the information, or Ind.Code § 35–42–3–3(a)(2), confinement by removal, as allowed by the instructions but not charged by information." *Id.* at 142.

However, the specific issue addressed by our Supreme Court in *Kelly* was the propriety of instructing a jury that it may convict a defendant of confinement if it concluded that he had committed acts described in either subsection one or two, when in fact the charging instrument only charged that he had committed acts described in subsection one. Justice Pivarnik's dissent, in which Justice Givan joined, maintained that I.C. 35–42–3–3 actually defines only one crime, and that the two subsections merely define two ways in which the crime may be committed. However, the resolution of that question, although important in *Kelly*, is not determinative as to the instant inquiry. Rather, the relevant inquiry here is whether I.C. 35–42–3–3 defines two separate species of confinement which may properly divide one continuous confinement episode into two distinct crimes for purposes of multiple convictions. Because we have found no Indiana case directly on

point we look to the law of other states for assistance.

Our research reveals that Indiana's Criminal Confinement statute is somewhat unique. Other states have enacted statutes which essentially address the same crime, although called by various other names. *E.g.,* Iowa Code Ann. § 710.7 (West 1979) ("False Imprisonment"); N.H.Rev.Stat.Ann. § 633.2 (1986) ("Criminal Restraint"); Utah Code Ann. § 76–5–304 (1990) ("Unlawful Detention"); Wash. Rev.Code Ann. § 9A.40.040 (1988) ("Unlawful Imprisonment"). None of the aforementioned statutes, however, defines the proscribed behavior as does Indiana—as committed in two ways, which are listed in the disjunctive. Other states' kidnapping statutes are also properly considered here because the critical "removal" and "restraint" elements are common to both kidnapping and confinement.[4]

Whether a confinement incident may result in two separate convictions depends in large part upon whether the confinement episode may be divided into separate parts. The initial question is then—what constitutes one confinement?

■ Because kidnapping—like confinement—involves the element of unlawful detention, it is a continuing crime; that is, it is continuously committed so long as the unlawful detention lasts. *See, e.g., State v. Zimmer* (1967) 198 Kan. 479, 426 P.2d 267, *cert. den.,* 389 U.S. 933, 88 S.Ct. 298, 19 L.Ed.2d 286; *People v. Behm* (1973) 45 Mich.App. 614, 207 N.W.2d 200, *rev'd on other grounds,* (1974) 52 Mich.App. 119, 216 N.W.2d 631; *State v. Hutchinson* (1983) 99 N.M. 616, 661 P.2d 1315, 1322–23; *State v. Dove* (1988) 52 Wash.App. 81, 757 P.2d 990, 994–96. In *People v. Martinez* (1984) 2d Dist., 150 Cal.App.3d 579, 198 Cal.Rptr. 565, the court considered the question whether, and how, a single confinement may be broken into distinct episodes.

In *Martinez* a woman was robbed and raped by two men in her bedroom while her

---

**4.** Kidnapping differs from confinement only in that the former is purposeful removal or restraint, whereas the latter is knowing removal or restraint. That difference is inconsequential here.

husband was confined in another part of the house. The husband managed to escape and called to his wife, who then ordered an assailant in the bedroom to leave. After that assailant left, the wife was alone in the bedroom. Police had arrived on the scene and ordered the other assailant to "freeze," whereupon that assailant called out that he had a hostage, referring to the wife who was still alone in the bedroom. At that point the wife ran down the hallway and past the assailant, who unsuccessfully attempted to grab her as she ran past. Both assailants were then arrested. The court noted that so long as the wife felt compelled by fear to remain, the confinement continued. *Martinez, supra,* 198 Cal. Rptr. at 580. However, the court concluded that after she had successfully ordered the assailant out of the room, she was no longer confined. In language relevant to the instant case the court stated:

> "The situation changed again when the police ordered [the other assailant] to freeze, stopping him in his flight. It was then that he declared the intent to hold [the wife] as a hostage, an intent that was not reasonably manifest before the order to freeze. At that point, in order for [the wife] to be held as a hostage, it was necessary for the defendants to seize or confine her anew.... *Had [the other assailant] succeeded in securing [the wife] in the hallway, she would have been seized anew. Had the threat of his presence in the hallway caused her to remain where she was for any appreciable length of time, she would have been confined anew."* (Footnote omitted) (emphasis supplied) 198 Cal. Rptr. at 580.

The above-quoted passage indicates that a confinement ends when the victim both feels and is, in fact, free from detention. It also indicates that a separate confinement begins if and when detention is reestablished.

In Indiana, courts have subscribed to the "continuous act" theory when discussing confinement in other contexts. In *Haggard, supra,* 445 N.E.2d 969, the defendant abducted a store employee following a robbery and drove with her to another county,

where he raped her before she managed to escape. The defendant pleaded guilty to confinement in the county in which the robbery and abduction occurred. He was subsequently convicted of confinement and rape in the county in which the victim escaped. Our Supreme Court overturned the second confinement conviction, stating:

> "In this case, defendant *committed one continuous act which violated the state statute against confinement,* and while his act continued through four counties it was nevertheless a single offense against the state." (Emphasis supplied) *Haggard, supra,* 445 N.E.2d at 972.

While *Haggard* specifically prohibits the State from dividing a continuing offense into separate offenses based upon geographical boundaries, the above-highlighted portion impliedly indicates that for double jeopardy purposes "confinement" is considered a single offense.

■ In *Hopper v. State* (1985) Ind., 475 N.E.2d 20, the defendant was convicted of Criminal Confinement and Criminal Confinement with a Deadly Weapon for activities occurring in one continuous act. In reversing the Criminal Confinement conviction, the court stated: "There was but one confinement and both convictions flowed from that offense. It is improper to twice sentence for the same offense in a single proceeding." *Hopper, supra,* 475 N.E.2d at 22. Our Supreme Court again seemingly indicated that, for double jeopardy purposes, confinement is a single offense. Whether the implications of *Hopper* and *Haggard* may be reconciled with the seemingly contradictory holding in *Kelly* lies within the context in which our Supreme Court addressed the statute. We do not read *Kelly* so expansively as to suggest that I.C. 35–42–3–3 lists two separate and distinct offenses, which may result in convictions for both, even when they are committed in one continuous episode. *Kelly* was considered in the context of jury instructions and charging informations. Its message is that the State must be precise when describing the allegedly criminal behavior in the charging information. It also states that the court may not instruct the

jury that it may convict upon proof of an element or activity not set out in the charging instrument. However, in a double jeopardy context, such as in *Haggard* and *Hopper,* our Supreme Court has consistently held that I.C. 35–42–3–3 defines one offense. When the confinement episode is continuous, only one confinement offense is committed, and multiple confinement convictions are improper. *Haggard, supra; Hopper, supra.* We therefore hold that a violation of I.C. 35–42–3–3 during one continuous confinement may result in only one confinement conviction, notwithstanding that the defendant engaged in two different acts, one proscribed in subsection one, and the other in subsection two.

In the instant case, H.S. was confined by removal, a violation of subsection two, when she was compelled at gunpoint to move from the front door to S.K.'s bedroom. Her confinement while in S.K.'s bedroom during the sexual assaults was of the kind defined in subsection one—restraint. However, at no time did H.S. escape from Idle's detention, although his attention was briefly diverted. It cannot be said that there were two distinct periods of confinement. Therefore, H.S. was the victim of only one continuous episode of confinement, and Idle may not be convicted twice for that single offense.

We remand to the trial court with instructions to vacate Idle's Confinement conviction under either Count I or Count V, and to modify the sentence accordingly. The confinement conviction under Count II is affirmed as are the Criminal Deviate Conduct and Rape convictions under Counts III and IV. In all other respects, the judgment of the trial court is affirmed.

BUCHANAN and SHARPNACK, JJ., concur.