**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 03 2012, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LAURA M. TAYLOR**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONTAY FOSTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1111-CR-1036 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Valerie C. Horvath, Commissioner
Cause No. 49G17-1105-FD-31248

**July 3, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Dontay Foster appeals his convictions for Criminal Confinement,[1] a class D felony; Criminal Confinement by Removal,[2] a class D felony; Residential Entry,[3] a class D felony; and Battery,[4] a class A misdemeanor, arguing the evidence was insufficient to sustain his convictions. Finding sufficient evidence, we affirm.

## FACTS

In May 2011, Sherri Clark lived alone in a ground-floor apartment in Indianapolis. Clark and Foster had been in a romantic relationship beginning in early March 2011, but the relationship had ended approximately two weeks before May 1, 2011. Foster was never on Clark's lease and had not paid rent, but he did live with her for about one month during their relationship.

Clark worked as a bartender and manager at Sun's Lounge. On May 1, 2011, her shift ended at 3:00 a.m., and she arrived home between 3:15 and 3:30 a.m. When Clark entered her apartment, she saw her living room blinds moving and walked over to the window and said, "D*mn my window's broke." Tr. p. 10. She then heard a noise coming from her bedroom, turned, and saw someone coming out of her closet and running towards her.

---

[1] Ind. Code § 35-42-3-3(a)(1).

[2] I.C. § 35-42-3-3(a)(2).

[3] Ind. Code § 35-43-2-1.5.

[4] I.C. § 35-42-2-1(a)(1)(A).

2

Clark tried to flee her apartment, but the person, who she later discovered was Foster, grabbed her, threw her on the floor, and began yelling and "cussing [her] out." Tr. p. 10-11. Foster held her on the ground for two or three minutes and, because he was so big, she could not move or say much. Clark finally managed to ask him, "what is wrong with you? Why are you doing this?" Id. at 11. When Foster stood up, she asked him again why he was "doing this," and then stated, "You broke my window. You broke in my house. Now they gonna make me pay for this window." Id.

Clark ran from Foster again, this time making it outside, but Foster caught her again, threw her on the ground, and held her down for several more minutes. Foster held his arm over her neck. As a result of this struggle, Clark suffered bruises on her arm and knee. Clark thought that if she would "agree with him" that he would "calm down and leave [her] alone," so when Foster moved off of her, she went back inside her apartment. Tr. p. 11. Clark again asked Foster why he was "doing this," to which he responded, "Don't worry about it. I'm gonna fix your window." Id. Foster explained that he was going to go to an empty apartment and find another window to replace her broken window.

When Foster left, Clark tried to go to two different friends' homes in neighboring buildings, but neither of them was home. Because Clark thought that Foster might find her if she stayed at her friend's apartment, she went to the top floor of the building and called the police.

3

As Clark came down the stairs, she saw Foster. Clark ran back up the stairs, but Foster caught her when she reached the top floor, held onto her leg, and dragged her back down the stairs. Although Clark was too scared during the incident to notice, she later realized that as the result of the attack, she had bruises on her arm and leg. The police arrived at that time, and Foster fled.

Meanwhile, Officer Dustin Greathouse of the Indianapolis Metropolitan Police Department (IMPD), had received a dispatch regarding a disturbance between a male and female. Other officers had already arrived, and when Officer Greathouse arrived, he found Clark in her apartment building crying and upset. Officer Greathouse talked with Clark and asked her what she needed. Clark showed him into her apartment where he saw the missing window. Clark asked Officer Greathouse to check all of her closets and to look throughout her home and the common hallway. Officer Greathouse did not see Foster. Once it was determined that Foster was no longer on the scene, the other officers left while Officer Greathouse stayed to prepare a report.

Detective Rebecca Popcheff of the IMPD was assigned to the case on May 2, 2011. Detective Popcheff spoke with Clark by telephone that same day and went to Clark's home to speak to her in person the next day. Detective Popcheff took photographs of Clark's bruises from the attack and talked to the office manager of the apartment complex about the window that had been replaced. The office manager had not charged Clark to replace the window.

4

On May 6, 2011, the State charged Foster with class D felony criminal confinement, class D felony criminal confinement by removal, class D felony residential entry, class A misdemeanor battery, and class A misdemeanor criminal mischief. Foster's bench trial commenced on October 12, 2011. In entering its guilty verdict, the trial court found that:

> the witness's testimony was extremely credible. She was very emotional when she was testifying. She had trouble catching her breath. She'd pause while remembering things. She made the comment that when she discovered her window was broken she said, "D*mn, someone broke my window. Now I'm going to have to pay for it," which seems like something you would say when you see something like that. She stated that she saw someone charging towards her out of the closet. She didn't say she saw [Foster] charging towards her out of the closet. She stated that she didn't know who it was immediately until he was on top of her, that her testimony today has been corroborated by two officers. It's been corroborated by pictures. It was corroborated in part by the apartment manager who fixed the window immediately and didn't charge her for it, that one of the pictures shows the screen broken and off to the side and shows the grill that was below the window.

Tr. p. 59-60. By contrast, the trial court noted that the "defendant's testimony was somewhat confused," and concluded that "[f]or those reasons this Court finds the State's witness, her credibility more persuasive. . . ." Id. at 60.

On October 26, 2011, the trial court held a sentencing hearing during which it imposed two years on each of Foster's convictions for criminal confinement, criminal confinement by removal, and residential entry, and one year for the battery conviction. The trial court ordered that the sentences run concurrently with each other, for a total executed term of two years in the Department of Correction. Foster now appeals.

Foster's sole argument on appeal is that there was insufficient evidence to support his convictions for two counts of criminal confinement, residential entry and battery. When considering a challenge to the sufficiency of the evidence, this Court neither reweighs the evidence nor judges the credibility of witnesses. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). Rather, this Court considers "'only the probative evidence and the reasonable inferences supporting the verdict.'" Id. (quoting McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005)). When the reviewing court is confronted with conflicting evidence, it will consider the evidence "'most favorably to the trial court's ruling.'" Id. The conviction will be affirmed unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000).

## I. Criminal Confinement

To secure a conviction for class D felony criminal confinement as alleged in Count I, the State was required to prove beyond a reasonable doubt that Foster did knowingly confine Clark without her consent. Appellant's App. p. 13; see also Ind. Code § 35-42-3-3(a)(1). Confinement under subsection (a)(1) is defined "as non-consensual restraint in one place." Idle v. State, 587 N.E.2d 712, 715 (Ind. Ct. App. 1992).

Here, Clark testified that Foster grabbed her and threw her down while "screaming and cussing [her] out." Tr. p. 10. Clark stated that "he had me down on the ground and he's big and so when he had me down I couldn't really move or say anything. . . ." Id. at

11. In light of Clark's testimony, we cannot say the evidence was insufficient to sustain Foster's conviction for criminal confinement as alleged in Count I.

Nevertheless, Foster contends that "[t]here was simply no evidence other than Clark's self-serving testimony that Foster confined her in the Apartment." Appellant's Br. p. 5. More particularly, Foster points out that he had recently ended their relationship and that "in a misguided effort to extract revenge upon him, she fabricated the story about Foster attacking and confining her in the Apartment." Id.

First, "[i]t is well-established that 'the uncorroborated testimony of one witness may be sufficient by itself to sustain a conviction on appeal.'" Scott v. State, 871 N.E.2d 341, 343 (Ind. Ct. App. 2007) (quoting Toney v. State, 715 N.E.2d 367, 369 (Ind. 1999)). Additionally, it is unclear from the record who ended the relationship. Although Foster testified that he decided to "le[ave] the relationship alone," he later testified that he offered Clark a drink that she declined. Tr. p. 47. Moreover, Clark's testimony was corroborated by the injuries she sustained during the scuffle with Foster. State's Ex. 3, 4. In any event, it is the function of the trier of fact to determine the credibility of witnesses. Klaff v. State, 884 N.E.2d 272, 274 (Ind. Ct. App. 2008). Accordingly, this argument fails.

Moving on to Count II, to secure a conviction for criminal confinement by removal, the State was required to prove beyond a reasonable doubt that Foster knowingly removed Clark by fraud, enticement, force, or threat of force from upstairs to downstairs. Appellant's App. p. 14; see also I.C. § 35-42-3-3(a)(2).

7

In this case, Clark testified that when she came downstairs after calling 911, she saw Foster. Tr. p. 14. Clark ran back upstairs, but Foster "dragged [her] back downstairs" "[b]y pulling [her] leg." Id. Clark's testimony was sufficient to secure Foster's conviction for criminal confinement as alleged in Count II.

However, Foster counters that he testified that he was at a cousin's house the morning of the alleged incident. Additionally, Foster points out that Officer Greathouse testified that he did not see Foster at Clark's apartment complex.

Here, the trial court explicitly found Clark to be the more persuasive witness. Tr. p. 59-60. And Clark testified that Foster ran when the police arrived. Id. at 14. Moreover, Foster's argument that the trial court should have believed him rather than Clark is simply a request that this Court reweigh the evidence, which we will not do. See Drane, 867 N.E.2d at 146. Consequently, the State presented sufficient evidence to support Foster's convictions for criminal confinement.

## II. Residential Entry

Foster next challenges the sufficiency of the evidence supporting his conviction for residential entry. To establish class D felony residential entry, the State was required to prove beyond a reasonable doubt that Foster "did knowingly break and enter the dwelling of Sherri Clark." Appellant's App. p. 15; see also Ind. Code § 35-43-2-1.5.

In the instant case, Clark testified that when she arrived home from work between 3:15 and 3:30 a.m., she noticed her living room "blinds moving." Tr. p. 10. Clark walked over to her living room window and said, "D*mn my window's broke." Id. The

8

State entered into evidence a photograph showing the broken screen. State's Ex. 1. Clark further testified that Foster appeared from her closet, running towards her. Tr. p. 10. Foster was not on the lease, no longer lived with Clark, and Clark had not given Foster permission to enter her apartment. Tr. p. 17. In light of this evidence, we cannot say that there was insufficient evidence supporting Foster's conviction.

Notwithstanding the above, Foster once again argues that Clark was merely fabricating the story because she was upset with Foster for allegedly ending the relationship. Additionally, Foster argues that he testified that he was at his cousin's house on the morning of the incident. As stated above, this a request that we reweigh the evidence and reassess the credibility of witnesses, which we will not do. See Drane, 867 N.E.2d at 146. Therefore, this argument also fails.

### III. Battery

Foster challenges the sufficiency of the evidence supporting his conviction for class A misdemeanor battery, arguing that there is conflicting evidence such that the State failed to prove beyond a reasonable doubt that he committed the offense. Specifically, Foster points out that there is contradictory evidence regarding his whereabouts, that Officer Greathouse testified that he did not observe any injuries on Clark, that Clark did not request medical care, and that there is no evidence that Foster "knowingly or intentionally committed the alleged touching." Appellant's Br. p. 8.

The secure a conviction for class A misdemeanor battery, the State was required to prove that Foster knowingly touched Clark in a rude, insolent, or angry manner and that

9

the touching resulted in bodily injury, specifically, "pain and/or bruising." Appellant's App. p. 16; see also I.C. § 35-42-2-1(a)(1)(A).

Here, Clark testified that she ran outside in an attempt to escape from Foster, but he caught her and had her on the ground. Tr. p. 11. Clark stated that she was on the ground for "about two or three minutes," and Foster had his forearm across her neck. Id. at 16. As a result of this struggle, Clark testified that she sustained bruises on her arm and knee. Id. at 19-20. Likewise, Detective Popcheff testified that she took photographs of Clark's injuries and saw bruising to Clark's forearm and knee. Id. at 42-43; State's Ex. 3, 4. Under these facts and circumstances, we cannot say that the evidence was insufficient to sustain Foster's conviction for class A misdemeanor battery, and we decline Foster's invitation to reweigh the evidence.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.