Hillsborough-southern judicial district
No. 2011-341

THE STATE OF NEW HAMPSHIRE

v.

PETER E. GIBBS, JR.

Argued: September 13, 2012
Opinion Issued: December 21, 2012

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Stephanie Hausman*, senior assistant appellate defender, and *Lisa L. Wolford*, assistant appellate defender, of Concord, on the brief, and *Ms. Hausman* orally, for the defendant.

HICKS, J. The defendant, Peter E. Gibbs, Jr., appeals his convictions following a jury trial in Superior Court (*Nicolosi*, J.) of two counts of criminal restraint, *see* RSA 633:2 (2007), and one count of being an armed career criminal, *see* RSA 159:3-a (2002). On appeal, the defendant argues that: (1) his right against double jeopardy was violated when he was twice convicted of a single criminal restraint; (2) his right to effective assistance of counsel was violated; and (3) there was insufficient evidence to find him guilty beyond a reasonable doubt of the crime of being an armed career criminal. We affirm in part, vacate in part, and remand.

I

The jury could have found the following facts. In the early morning of March 16, 2008, the victim awoke in his bedroom to find a man pointing a gun at him and claiming to be a police officer. Another man stood in the hallway. Both men's faces were covered by scarves. The man with the gun tied the victim's hands and proceeded to ransack the bedroom. Subsequently, that man took the victim downstairs to the kitchen where he was placed in a chair. Shortly thereafter, he was moved to the basement and tied to a column. The man with the gun stayed in the basement with him while the other man carried some of the victim's belongings upstairs. Fifteen to twenty minutes later, the man with the gun brought the victim upstairs to the living room where he was tied to a chair. Both men then left the house. After struggling for fifteen to twenty minutes, the victim freed himself and called the police.

The defendant was charged with the crimes of being an armed career criminal, armed robbery, burglary, and three counts of criminal restraint.

The criminal restraint charges were based on the defendant allegedly displaying a handgun and: (1) tying the victim's hands in his bedroom; (2) tying him to a column in his basement; and (3) tying him to a chair in the living room. The defendant waived his right to a jury trial on the armed career criminal charge.

At trial, the jury acquitted the defendant of the charge of tying the victim's hands in his bedroom. The jury found him guilty of the other two criminal restraint charges, armed robbery, and burglary. The trial court found him guilty of the armed career criminal charge. The defendant received two sentences to be served concurrently for the criminal restraint convictions.

## II

The defendant first argues that his right against double jeopardy under the State and Federal Constitutions has been violated because the two criminal restraint convictions arose from one continuous period of confinement, and, therefore, constitute one offense for double jeopardy purposes. We first address the defendant's argument under the State Constitution and rely upon federal law only to aid our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

Part I, Article 16 of the New Hampshire Constitution provides that "[n]o subject shall be liable to be tried, after an acquittal, for the same crime or offense." N.H. CONST. pt. I, art. 16. In addition to protecting against successive prosecutions for the same offense after acquittal or conviction, the provision has also been construed to protect against multiple punishments for the same offense. *State v. Glenn*, 160 N.H. 480, 486 (2010).

RSA 633:2, I, states that "[a] person is guilty of a class B felony if he knowingly confines another unlawfully in circumstances exposing him to risk of serious bodily injury." The phrase "confines another unlawfully," as used in this section, "includes but is not limited to confinement accomplished by force, threat or deception." RSA 633:2, II. To "confine" means "to hold within bounds," or "restrain from exceeding boundaries." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 476 (unabridged ed. 2002).

The defendant argues that the two criminal restraint convictions violate his right against double jeopardy because they constitute the same course of unlawful conduct and, therefore, a single offense. The State responds that there was no double jeopardy violation because the two criminal restraint convictions involved different circumstances of confinement and different risks. The State argues in the alternative that even if the

defendant subjected the victim to only one period of confinement, he was still subjected to "two episodes of illegal restraint."

■ We have had no occasion to address whether, and under what circumstances, a defendant may face multiple indictments for criminal restraint based upon a continuing course of criminal conduct. Our review of other authorities, however, supports the generally accepted principle that a defendant may not be charged multiple times for a crime of interfering with another person's freedom — such as kidnapping or criminal confinement — unless the victim has been freed and subsequently restrained again. *See, e.g., People v. Palacios*, 161 P.3d 519, 522 (Cal. 2007); *State v. Stouffer*, 721 A.2d 207, 215 (Md. 1998); *People v. La Marca*, 144 N.E.2d 420, 424-25 (N.Y. 1957); *cf. United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999) (agreeing with several jurisdictions that kidnapping is a "unitary crime" that "does not end until the victim is free"). We adopt this approach and conclude that the unlawful confinement element of RSA 633:2 begins when the confinement is initiated and ends only "when the victim both feels and is, in fact, free" from the confinement. *Idle v. State*, 587 N.E.2d 712, 717 (Ind. Ct. App. 1992); *see also Bunch v. State*, 937 N.E.2d 839, 848-49 (Ind. Ct. App. 2010) (holding that three counts of criminal confinement violated double jeopardy where victim was moved at gunpoint throughout home during burglary), *transfer denied*, 950 N.E.2d 1196 (Ind. 2011); *State v. Jones*, 916 P.2d 1119, 1123 (Ariz. Ct. App. 1995); *State v. Freeney*, 637 A.2d 1088, 1091 (Conn. 1994). This interpretation comports with the plain meaning of the statute because confining an individual necessarily involves a period of time in which the individual is deprived of his freedom.

■ Our review of the record reveals that the defendant engaged in only one episode of criminal restraint. For the purposes of our analysis, we need review only the acts for which the defendant was convicted, which include tying the victim in the basement and then in the living room, during which, both times, the defendant was displaying a gun. The defendant's confinement of the victim was continuous because the victim at no point felt free to leave. *See, e.g., Bunch*, 937 N.E.2d at 848-49; *Jones*, 916 P.2d at 1123; *Idle*, 587 N.E.2d at 717. The confinement, which occurred over the course of thirty to forty minutes, began when the victim was tied to a column in the basement, continued as he was brought upstairs and tied to the living room chair, and ended only when he was able to free himself after the defendant and his accomplice departed. Furthermore, the defendant restrained the victim with only one intent — to prevent him from interfering with the burglary. *See Freeney*, 637 A.2d at 1091. Further, there is no evidence that the victim felt free during his movement between these areas because his movement was always controlled by the burglars and he was continually

aware of the threat of the gun. *See Bunch*, 937 N.E.2d at 848-49. The facts demonstrate that the victim was continuously confined from the time he was tied in the basement until the point at which he was able to free himself and, therefore, the defendant engaged in only one episode of criminal restraint.

■ We also reject the State's argument that the different risks involved in restraining the victim in the basement and the living room created "two episodes of illegal restraint." The State asserts that the risk involved in the two convictions was different because initially the gun was the only source of risk, whereas after the defendant's departure, the victim was at risk of not being freed. RSA 633:2, I, however, requires only a "risk of serious bodily injury" and does not establish separate crimes based upon the level or type of risk. *Cf. State v. Burke*, 162 N.H. 459, 462 (2011) (rejecting the defendant's argument that the State must present "an actual, identifiable risk"). Our reading of the record reveals that the defendant exposed the victim to such risk throughout the period upon which his two convictions were based. Accordingly, we conclude that, as with the confinement element, the "risk" element of the statute was established continuously during the period in question.

■ Based on the foregoing discussion, we conclude that the defendant's conduct constituted only a single confinement exposing the victim to risk of serious bodily injury, and, therefore, his two convictions of criminal restraint violate the Double Jeopardy Clause of the New Hampshire Constitution. As the United States Supreme Court noted in *Brown v. Ohio*, 432 U.S. 161, 169 (1977), "[t]he Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." Accordingly, one of the two criminal restraint convictions and sentences must be vacated.

Because the defendant prevails under our State Constitution, we need not reach the federal issue. *See Ball*, 124 N.H. at 232.

## III

The defendant next argues that his right to effective assistance of counsel was violated. Assuming, without deciding, that the defendant properly raised this argument, we nevertheless decline to address it pursuant to *State v. Thompson*, 161 N.H. 507 (2011).

■ In *Thompson*, we held that the only type of ineffectiveness of counsel claim permissible for direct appellate review is "the extraordinary case where the factual basis of the claim appears indisputably on the trial record." *Thompson*, 161 N.H. at 527 (quotation omitted). We stated that

although trial counsel's reasoning may seem apparent from the record, "it is usually necessary to develop an additional record to show the reason for the act or omission that appears in the trial record." *Id.*

Here, the defendant claims that trial counsel's performance fell outside the range of reasonable professional judgment because "he failed to object to, and indeed elicited, testimony" from a witness that established the defendant as a violent criminal. The State argues that the testimony in question was neither directly inculpatory nor clearly inadmissible. The State further contends that defense counsel's actions were part of a reasonable trial strategy in which he attempted, however unsuccessfully, to impeach the witness in question.

■ The defendant's claims cannot be decided on the face of the trial record. Because, in the absence of a record of additional evidence, we cannot determine whether the actions of the defendant's trial counsel were part of an acceptable trial strategy, we decline to address this argument. Our ruling is without prejudice to any proper ancillary proceeding.

## IV

Finally, the defendant argues that there was insufficient evidence that he possessed a handgun to support his conviction of being an armed career criminal. He contends that if there was evidence that he was the man with the gun during the home invasion or that he possessed a gun while in New Hampshire, such evidence is solely circumstantial and not sufficient to support a finding of guilt beyond a reasonable doubt. The State counters that the victim's testimony describing the men who burglarized his home, and the testimony of the other witnesses describing the defendant's actions, were sufficient to establish that the defendant possessed a handgun while in New Hampshire.

■ Our standard for review in this area is well established:

> To prevail upon his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation.

*State v. Ruggiero*, 163 N.H. 129, 138 (2011) (quotation omitted).

To prove that the defendant is guilty of the armed career criminal charge, the State was required to establish that the defendant was convicted of three or more of the statutorily enumerated felonies and that he owned or had "in his possession or under his control, a pistol, revolver, rifle, shotgun, or any other firearm." RSA 159:3-a, I. Because the defendant does not contest that he has been previously convicted of three or more qualifying felonies, the only element the State had to prove at trial was that the defendant owned or possessed a handgun.

We conclude that there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that the defendant owned or possessed a handgun, and, therefore, was guilty of the crime of being an armed career criminal. To the extent that the defendant argues that the evidence was solely circumstantial, we disagree. The defendant told Michael Bailey, a man he met while incarcerated, that he and his accomplice "had guns" at the time of the home invasion. This constitutes direct evidence of the defendant's guilt, obviating the rule that if there is solely circumstantial evidence, the trier of fact must exclude all rational conclusions other than guilt. *See Ruggiero*, 163 N.H. at 138; *see also State v. Newcomb*, 140 N.H. 72 (1995) (stating that defendant's admission to witnesses was direct evidence).

In addition, the victim testified that one of the two men involved in the home invasion had a gun, and that the other person was "a little taller" than the defendant. Shortly after the crime, the police stopped a van in which the defendant was a passenger, and a gun holster was found in the vehicle. Furthermore, not only did Bailey testify that the defendant said that his gun had been sold for drugs in Massachusetts shortly after the invasion, but another witness also testified that he overheard the defendant express anger that his gun had been sold for drugs.

Upon consideration of all of the evidence, we conclude that there was sufficient evidence for a rational trier of fact to find that the defendant possessed a gun, and, therefore, to find the defendant guilty of the crime of being an armed career criminal beyond a reasonable doubt.

## V

In light of the foregoing, we remand to the trial court with instructions to vacate one of the two criminal restraint convictions and resulting sentence, but in all other respects we affirm.

*Affirmed in part; vacated in part; and remanded.*

CONBOY, LYNN and BASSETT, JJ., concurred.