[No. 19853–0–I.   Division One.   August 1, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY DEAN DOVE, *Appellant.*

*Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Saul Gamoran, Deputy,* for respondent.

SCHOLFIELD, C.J.—The defendant, Larry Dean Dove, appeals from a conviction for first degree kidnapping. We affirm.

## FACTS

On August 6, 1986, Mrs. Undi came home from shopping and drove into her garage. A masked figure, later identified as Greg Bingisser, grabbed her out of the car, threw her onto the cement floor, and tied her hands behind her back. After a brief struggle, Bingisser placed Mrs. Undi in the trunk of her car, drove to a wooded area, took her out of the trunk and walked her down a ravine. He told her that he would not harm her, but he used abusive language. At the bottom of the ravine, he chained her to a tree and left. He returned a short time later, put chains around her wrists, gave her a partial can of Coke, and stated that he had to do this because there were two others involved. Then he left again.

A neighbor, Shirley Erickson, had notified the police after she arrived at the Undi residence for a dinner date and saw that both garage doors were open, no cars were in the garage, and some things were spilled on the floor, including Mrs. Undi's credit cards and her key ring.

Mr. Undi arrived home at approximately 7 o'clock. After speaking with the police, he called his son and daughter. At about 11:05 p.m., the Undis received a phone call. The person said, "Hundred thou, 9 p.m. tomorrow", and then hung up.

The Undis notified the police that they got a ransom demand, and the FBI became involved shortly thereafter.

Arrangements were made to tape and trace incoming calls. The Undis obtained $100,000 in $100 bills, as requested.

A series of phone calls was received by the Undis over the next several hours. In response to a call received shortly after midnight on August 8, Shale Undi and his brother dropped the money at a place marked by an orange traffic cone behind a 7–Eleven store. The money was not picked up after that first drop, and Shale and his brother retrieved the money after another call. At 9 p.m. the next evening, they received a call and then proceeded to a second destination marked by an orange cone and dropped the money off again. This call was traced to a pay telephone at a truck weigh station. At approximately 11:40 p.m., they received a final phone call in which they were told where to find Mrs. Undi. The police then recovered Mrs. Undi and took her to the hospital.

On August 5, 1986, at approximately 8:30 a.m., a neighbor had observed two men standing at the corner of the Undi home talking together. On the same day at approximately 7 or 7:30 a.m. another neighbor observed a blue Pontiac and wrote down its license number. The registered owner of the vehicle was Patrick Lemma.

Officers located Lemma at a campground in eastern Washington. Lemma had been at the park since August 6, the date of the abduction. The police kept Lemma under surveillance, but did not contact him until Mrs. Undi had been recovered. At that time, Lemma made a statement which led the police to Bingisser.

Lemma, Bingisser, and Dove, who were friends and were former employees of Mr. Undi, were arrested along with Bingisser's wife, Marci Zaharevich. Zaharevich was later released because the police determined that she was not involved. Ninety–seven thousand six hundred dollars of the money, wrapped in aluminum foil, was found in Bingisser's bedroom. Bingisser, Lemma and Dove were charged by information with one count of first degree kidnapping. Bingisser pleaded guilty, and Dove pleaded not guilty. In exchange for Lemma's testimony at trial, the State agreed

to charge him with rendering criminal assistance in the first degree rather than kidnapping in the first degree.

Testimony at trial indicated that on July 22, 1986, Bingisser had approached Lemma about kidnapping Mrs. Undi. Lemma obtained the chains that were later used to chain Mrs. Undi to the tree. Bingisser and Lemma went to the Undis' residence on three or four occasions. Lemma had taken some chloroform with him to subdue Mrs. Undi. Bingisser and Lemma discussed where they were going to hide Mrs. Undi, and they went to the place and put chains around a tree.

On August 5, Bingisser and Lemma went to the Undis' house in Lemma's car to observe Mrs. Undi. They had planned to abduct her on that day, but when Mrs. Undi came home, Lemma told Bingisser that he did not want anything to do with it, so they left.

At about 8 or 9 o'clock the next morning, Lemma went camping in eastern Washington. On August 7, Bingisser went to see Lemma in eastern Washington, told him he had abducted Mrs. Undi and asked him to come back and help him. Lemma refused, so Bingisser left.

Bingisser first approached Dove about the kidnapping 2 to 3 weeks before the actual abduction took place. Dove refused. On August 5, Bingisser asked Dove to cancel a trip to Oregon because he could make more money with him. Dove again refused. Dove spent the night of August 5 in a truck parked outside of his boss's house and on August 6 at 10:30 a.m. he went to Portland with his boss for a day and a half.

Both Dove and Dove's boss testified that Dove never tried to call Bingisser while he was in Oregon. Dove initially denied seeing Bingisser on August 7, but later said that on August 7, Bingisser came to his house and asked him to go out for a beer. Bingisser then told Dove that he had kidnapped Mrs. Undi, but Dove testified that he did not believe him, although Bingisser told him specific facts about the kidnapping. That evening, Dove dropped Bingisser off at a 7–Eleven, drove home and went to bed. At the

the 7–Eleven, Dove saw Bingisser make a phone call, which Dove knew was a ransom demand.

The next day, Bingisser told Dove he needed him to help pick up the ransom money. Bingisser and Dove then drove to a construction site, where Dove grabbed an orange cone and put it in the car. They drove to a location where Dove placed the cone alongside the road, and then they drove to a phone booth by a truck weigh station. Dove testified that at this point, he believed that Bingisser had kidnapped Mrs. Undi. Bingisser held Dove's nose while Dove read a note to the Undis. After making the phone call, Dove dropped Bingisser off at the orange cone and drove to where he was supposed to wait for Bingisser. Bingisser returned to the car with something wrapped in tin foil which Bingisser said was $100,000. They drove to another phone booth, and Bingisser made a phone call to the Undis, telling them where to find Mrs. Undi. Bingisser did not offer Dove any of the money, nor did Dove expect to receive any money. As compensation for his part in the kidnapping, Dove was offered high–grade marijuana from Bingisser before the kidnapping was committed.

Defense testimony showed that on the evening of August 9, Bingisser hired a limousine and went to Montana's with Dove's brother and two other men. While at Montana's, they got in an argument, and Bingisser and Dove's brother beat up Dove. Then Bingisser put Dove in a taxi cab and sent him home where he had a fight with his father. According to Dove's sister, Dove came home around midnight. However, Lynn Fife, the chauffeur of the limousine, presented contradictory testimony that when he picked up the group from Montana's after midnight, Dove was among them. He then testified as to the party's activities that night, including several attempts by the group to purchase drugs.

When Dove gave his statement to the police, he had black eyes and cuts and bruises on his face, which were due to both a fight with Bingisser and his brother and a fight with his father.

Dove was tried before a jury. At trial, Dove presented testimony to support his argument that his participation had occurred under duress. After the State rested, Dove moved to dismiss the kidnapping charge on grounds that asking for ransom is not an element of first degree kidnapping, and in order for one to be guilty as an accomplice, he must be an accomplice to an element of the crime charged. The trial court denied the defense motion.

Dove objected to the use of the words "or an accomplice" in the definitional instruction on kidnapping on grounds that the instruction was misleading in light of the facts of the case. Dove did not object to the same words in the "to convict" instruction. Dove also objected to the trial court's failure to give his proposed instruction on extortion as a lesser included offense.

Dove made a motion for mistrial based upon the State's use of Fife's identification of Dove as involved in the night's search for drugs because that identification was known by the State to contradict other evidence that Dove had been sent home before the search for drugs took place. The trial court denied the motion for a mistrial.

The jury found Dove guilty of first degree kidnapping. In connection with his sentencing, the trial court made the following findings:

1. The defendant did not participate in the abduction, assault, or concealment of the victim.

2. The offense was principally accomplished by the Co–Defendant Bingisser, who was the dominant individual in the commission of the crime.

3. The defendant did not participate in the planning of the offense and his involvement was limited to assisting in the picking up [of] the ransom.

On January 21, 1987, judgment and sentence were entered for Dove, and he was committed to the Department of Corrections for 42 months, an exceptional sentence below the standard range. This appeal timely followed.

### Sufficiency of the Evidence

The issue in this case is whether Dove is guilty of first degree kidnapping where his participation in the crime commenced with aiding in recovery of the ransom while Mrs. Undi was still under restraint and Dove had knowledge of that restraint.

A person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent to hold him for ransom. RCW 9A.40.020(1)(a). "Abduct" means to restrain a person by secreting or holding him in a place where he is not likely to be found. RCW 9A.40.010(2)(a). "Restrain" means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty. RCW 9A.40.010(1).

Dove concedes that Mrs. Undi was the victim of a first degree kidnapping. However, Dove argues that he was not an accomplice to that kidnapping.

Accomplice liability in Washington is defined as follows:

A person is an accomplice of another person in the commission of a crime if:
(a) With knowledge that it will promote or facilitate the commission of the crime, he
(i) solicits, commands, encourages, or requests such other person to commit it; or
(ii) aids or agrees to aid such other person in planning or committing it . . .

RCW 9A.08.020(3).

The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime.

WPIC 10.51, in part.

■■ Dove argues that there was insufficient evidence to convict him because the crime of kidnapping is completed with an abduction, an element with which Dove was not involved. Dove is correct that the crime of kidnapping is complete when all its essential elements are completed. 1

Am. Jur. 2d *Abduction and Kidnapping* § 10 (1962). Nevertheless, since kidnapping involves the element of unlawful detention, it is a continuing crime—it is continuously committed as long as the unlawful detention of the kidnapped person lasts. 1 Am. Jur. 2d *Abduction and Kidnapping* § 10 (1962). Furthermore, it is not necessary that a person be actually present at a kidnapping if he is otherwise a party to the crime. 51 C.J.S. *Kidnapping* § 3 (1967); 1 Am. Jur. 2d *Abduction and Kidnapping* § 7 (1962). Accordingly, we find that even if Dove did not participate directly in Mrs. Undi's abduction, the kidnapping continued until she was released and therefore, any assistance by Dove until her release made him an accomplice to first degree kidnapping.

The evidence in a criminal prosecution is sufficient to support a conviction if, considering the evidence most favorably to the State, a rational trier of fact could have found all of the elements of the crime charged beyond a reasonable doubt. *State v. Baeza,* 100 Wn.2d 487, 670 P.2d 646 (1983); *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). A reasonable jury could have found beyond a reasonable doubt that Dove was an accomplice in the kidnapping. Although he was not involved in the planning of the crime or the actual abduction of Mrs. Undi, he did assist in the commission of the crime. On August 7, while Mrs. Undi was still being held captive, Bingisser told Dove that he had kidnapped her and asked him to help collect the ransom. According to the State's evidence, Dove assisted with the unsuccessful ransom attempt that evening. The next day, Dove stole an orange traffic cone which he placed where the money was to be dropped, he called the Undis' house to relay the ransom instructions and waited while Bingisser picked up the money. Although collecting the ransom is not an element of first degree kidnapping, Dove assisted in obtaining the ransom, thereby encouraging continued restraint of Mrs. Undi.

We find that Dove's participation by attempting to obtain the ransom was sufficient for the jury to find beyond

a reasonable doubt that Dove was an accomplice to the crime.

The remainder of this opinion does not have precedential value and will not be published.

Dove's conviction is affirmed.

WILLIAMS and COLEMAN, JJ., concur.

Review denied by Supreme Court November 29, 1988.