# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49762-0-II |
| Respondent, | |
| v. | |
| DARRELL DUANE CLASSEN, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Darrell Classen appeals his convictions for felony harassment, first degree kidnapping, two counts of second degree assault, and attempted first degree kidnapping. We hold that (1) kidnapping is a course of conduct crime; (2) under the facts of this case, Classen's first degree kidnapping conviction and attempted first degree kidnapping conviction were based on two separate acts and, therefore, do not violate the prohibition against double jeopardy; and (3) Classen's counsel did not provide ineffective assistance by failing to request a voluntary intoxication instruction or by failing to raise a voluntary intoxication defense.

However, we hold that his counsel provided ineffective assistance by failing to request an inferior degree offense instruction on one assault charge.  Consequently, we affirm Classen's convictions for felony harassment, first degree kidnapping, one count of second degree assault, and one count of attempted first degree kidnapping.  We reverse Classen's second degree assault

convictions in count IV and remand to the trial court for further proceedings consistent with this opinion.[1]

## FACTS

### I. BACKGROUND

Crista Cole was an acquaintance of Classen's. On the morning of September 5, 2015, Classen arrived at Cole's residence near Portland, Oregon as she was entering her vehicle with her infant son. Cole offered to give Classen a ride and Classen accepted, saying that Cole could take him "right down the street." Report of Proceedings (RP) at 79. Classen got in the front passenger seat; Cole's son sat in the back seat in his car seat.

After driving down the street, Cole asked Classen if he wanted to get out and Classen did not respond. Cole told Classen that he needed to get out of the car, but Classen refused. Classen then began poking Cole's ribs and grabbing her hair. Classen also began calling Cole a "cop" and a "fed." RP at 82. Classen punched Cole in the ribs, head, and face.

Classen then directed Cole to drive. Using scissors he found in the vehicle, Classen cut off a chunk of Cole's hair. At one point, Classen duct-taped Cole's hands to the steering wheel, but he removed the tape after Cole started crying.

While Cole continued to drive, Classen took a bandana, rubbed it on his genitals, and put the bandana on Cole's face. Classen also touched Cole's genitals. Classen told Cole that he was going to rape her and her son and threatened to slit her throat. Classen cut Cole's arm with the scissors and hit her with a curling iron.

---

[1] Because we reverse, we do not consider whether the trial court erred by imposing a $200 criminal filing fee.

Cole drove onto Interstate 205 heading north into Washington. Right after crossing into Washington, Cole's vehicle ran out of gas and she pulled over to the side of the highway. All the while, Classen continued to hit and threaten Cole.

After pulling over, Cole opened her door and ran onto the highway. Classen exited the vehicle and began to chase Cole. Classen caught Cole and pushed her down. Cole got up and began to run, and Classen again ran after her.

Cole ran up to a man in a truck and screamed, "Please help me." RP at 100. Classen then grabbed Cole by the neck and pushed her head against the side of the truck. Several passersby stopped as Classen continued to chase Cole. When one of the people who had stopped stepped between Classen and Cole, Cole then ran back to her vehicle and retrieved her son who was still seated in the back seat.

After retrieving her son, Cole ran in front of a vehicle driven by Eva Scherer. Cole told Scherer that Classen was trying to kill her. Another woman pulled her vehicle to the side of the road behind Scherer's vehicle and Cole got into that vehicle with her son.

Classen approached Cole and Scherer. As Classen approached, Scherer attempted to prevent Classen from passing her by putting her hand up and asking him to stay by Cole's vehicle. Despite her attempts, Classen continued to approach Scherer. Classen told Scherer that he would "take" her instead of Cole and told Scherer to get in the car. RP at 235. Classen then hit Scherer across the side of her face and ran away.

Some of the bystanders started to chase Classen, who tried to escape by running. Eventually, two men were able to catch and subdue Classen. They restrained him until the police arrived.

3

The State charged Classen with felony harassment, first degree kidnapping, two counts of second degree assault, and one count of first degree attempted kidnapping. Cole was the victim of both kidnappings. Classen's contact with Scherer served as the basis for one of the second degree assault charges (count IV).

Prior to trial, Classen underwent competency evaluations. Dr. C. Kirk Johnson, a psychologist, conducted one such evaluation and diagnosed Classen with amphetamine use disorder based on "file review and recent history." Clerk's Papers (CP) at 34. Dr. Johnson also reported that Classen stated he had no memory of his behavior on the day of the incident and only remembered "'waking up in the back of a car.'" CP at 32. Classen denied drug and alcohol use to Dr. Johnson. The examiners both determined that Classen was competent to stand trial.

## II. TRIAL

At trial, the witnesses testified consistently with the above facts. In addition, Cole testified that prior to the day of the incident she had never had any issues with Classen. Cole stated that on the day of the incident Classen did not at first seem paranoid, but his actions "progressively started getting worse" and he started "saying a bunch of stuff that didn't really make sense at the time." RP at 82, 83.

Scherer testified that Classen was "talking and talking and talking," that he appeared agitated, that he "made several references to being an undercover cop, and that [Cole] was his test subject and he needed her back." RP at 234. Ronnie Thomas, a bystander who helped detain Classen, testified that Classen kept saying "odd" things like "I'm going to live my life." RP at 135. Thomas also testified that Classen would "count to five" and then attempt to escape restraint. RP at 135.

Sergeant Blaise Geddry, one of the responding officers, testified that he contacted Classen as Classen sat in the back of a patrol car. Sergeant Geddry said that Classen's

> . . . muscles were twitching. He was smacking his lips, as if he were extremely thirsty. He was nonresponsive to any questions as far as, "What's your name?" He was making weird nonsensical statements and just odd types of noises.

RP at 180.

Sergeant Geddry further testified that during the course of his work, he often comes in contact with people who are under the influence of intoxicants and that he has come to recognize certain signs people exhibit when they are under the influence of various types of intoxicants. Sergeant Geddry opined that Classen appeared to be under the influence, but the sergeant did not mention which substance might have been affecting Classen.

Classen's counsel did not propose a jury instruction on voluntary intoxication or a jury instruction on the inferior degree offense of fourth degree assault concerning the assault against Scherer.

During closing arguments, the State argued the following regarding the second degree assault charge in count IV:

> Assault in the Second Degree, Count IV, against Eva Scherer: Same scenario outside the vehicles, Eva is trying to stop him from getting [Cole]. He strikes her, assaults her. What's his intent? Again, we don't have to guess at it because he tells us. He makes it clear. He is going to get [Cole] back in the car. He is going to get Eva. He is assaulting her to further his crime of kidnapping.

RP at 296.

Regarding the attempted kidnapping charge, the State argued:

> Count V, Attempted Kidnapping: Again, this relates to his attempt to get [Cole] back, chasing her across lanes of travel, chasing her across the freeway, all

> of that that we've talked about. What's he trying to do there? Is he trying to catch her so he can give her a bouquet? No.
>
> He is trying to catch her because he wants her back in the car so she is back in his control, so he can get her away from these good people that have stopped there on the roadside.

RP at 296.

During Classen's closing argument, his counsel mentioned the assault charges briefly. Counsel stated, "Is Mr. Classen guilty or is he not guilty? He is guilty of assault. There is no question about that. What kind of assault is it? That's the question." RP at 300.

The jury found Classen guilty on all counts. The trial court sentenced Classen to a prison term and imposed legal financial obligations that included a $200 dollar criminal filing fee. Classen appeals his convictions and sentence.

## ANALYSIS

### I. DOUBLE JEOPARDY

Classen first argues that his convictions for first degree kidnapping and attempted first degree kidnapping of Cole violate the prohibition against double jeopardy because they constitute one unit of prosecution. We disagree.

A. *Legal Principles*

The United States and Washington Constitutions prohibit double jeopardy. U.S. CONST. amend. V; WASH. CONST. art I, § 9. The prohibition on double jeopardy disallows a person from being prosecuted for the same offense after being acquitted, being prosecuted for the same offense after being convicted, or receiving multiple punishments for the same offense. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). We review double jeopardy claims de novo. *Villanueva-Gonzalez*, 180 Wn.2d at 979-80.

B.     *Unit of Prosecution—Course of Conduct*

When a defendant is convicted of violating one statute multiple times, each conviction can withstand scrutiny under double jeopardy standards only if each one is a separate unit of prosecution. *State v. Graham*, 153 Wn.2d 400, 404-05, 103 P.3d 1238 (2005). The unit of prosecution is the scope of the criminal act as defined by the legislature. *State v. Reeder*, 184 Wn.2d 805, 825, 365 P.3d 1243 (2015). The unit of prosecution for a crime may be a single act or it may be a course of conduct. *State v. Tvedt*, 153 Wn.2d 705, 710, 107 P.3d 728, (2005). The focus of our inquiry is on the actual act necessary to commit the crime. *State v. Boswell*, 185 Wn. App. 321, 329, 340 P.3d 971 (2014).

Determining whether the acts comprise separate units of prosecution requires statutory interpretation to ascertain legislative intent. *Reeder*, 184 Wn.2d at 825. In determining whether the legislature intended a crime to be a course of conduct offense or a separate act offense, we first examine the statutory language. *Villanueva-Gonzalez*, 180 Wn.2d at 982. If the statute does not plainly define the unit of prosecution, we next examine the legislative history to discern legislative intent. *State v. Jensen*, 164 Wn.2d 943, 949, 195 P.3d 512 (2008). If the legislature fails to define the unit of prosecution or its intent is unclear, any ambiguity must be resolved in favor of the defendant and against allowing a single incident to support multiple convictions under the rule of lenity. *Tvedt*, 153 Wn.2d at 711. Washington courts have not addressed the unit of prosecution under the kidnapping statute.

First degree kidnapping is defined in RCW 9A.40.020 (1)(c), (d). That statute states that a person is guilty of kidnapping in the first degree when he or she "intentionally abducts another person with intent . . . (c) [t]o inflict bodily injury on him or her; or (d) [t]o inflict extreme

mental distress on him, her, or a third person." "Abduct" means "to restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." RCW 9A.40.010(1). "Restrain" means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty. Restraint is 'without consent' if it is accomplished by physical force, intimidation, or deception." RCW 9A.40.010(6).

It is clear from the plain language of the statute that kidnapping is a continuing course of conduct crime. Because "abduct" is defined as restraining in some manner, and "restrain" is defined as restricting a person's movements in a way that "substantially interferes with his or her liberty," it follows that a crime of kidnapping continues so long as the victim's liberty is substantially interfered with. The use of the phrase "restrict a person's movements" and "in a manner which interferes substantially with his or her liberty" contemplates a continued state of being abducted until a person's liberty is no longer substantially interfered with. Thus, the legislature intended to punish a continuing course of conduct, the act of abduction itself and the continued restraint of a victim's liberty.

This interpretation is supported by *State v. Dove*, 52 Wn. App. 81, 82, 757 P.2d 990 (1988). In *Dove*, we held that the crime of kidnapping is complete when all its essential elements are completed. 52 Wn. App. at 87. We further held that kidnapping involves the element of unlawful detention and is continuously committed as long as the unlawful detention of the kidnapped person lasts. *Dove*, 52 Wn. App. at 88.

It is clear from the statute's plain language that kidnapping is a course of conduct crime that continues until a victim's liberty is restored. Accordingly, we employ the continuing course of conduct analysis in determining the correct unit of prosecution.

C.      *Classen's Kidnapping of Cole*

We next perform a factual analysis to determine whether Classen's acts constituted more than one course of conduct under the facts of this case. Classen argues that his actions, which led to convictions of both kidnapping and attempted kidnapping, consisted of a single course of conduct aimed at abducting Cole. We disagree.

An analysis under the course of conduct test is highly fact dependent. *Villanueva-Gonzalez*, 180 Wn.2d at 985. The ultimate determination of whether multiple acts constitute one course of conduct depends on the totality of the circumstances. *Villanueva-Gonzalez*, 180 Wn.2d at 985.

Classen's kidnapping conviction arose from Classen's restraint of Cole in her vehicle. Classen's attempted kidnapping conviction arose from Classen's pursuit of Cole after she escaped Classen's restraint and begin running across the interstate. As discussed above, a kidnapping continues until a victim regains her liberty. The ultimate question then is whether Cole regained her liberty during the incident or whether Classen continually restricted Cole's movements in a manner which substantially interfered with her liberty.

The facts show that once Cole stopped her vehicle and ran across the highway, her movements were no longer restricted by Classen. She had escaped from Classen's initial restraint and had regained her liberty. Though Classen immediately pursued and assaulted Cole

9

multiple times, Cole was no longer restrained. Only after Cole was free from restraint did Classen attempt to kidnap her again.

Courts in other jurisdictions have also held that separate instances of kidnapping exist where the facts show that the victim regained his or her liberty before being abducted or restrained again. *See State v. Freeney*, 228 Conn. 582, 588, 637 A.2d 1088 (1994) (holding that that a second count of kidnapping would have been warranted in a particular case only if the victim had escaped and then been recaptured by defendant because kidnapping continues until that the victim's liberty is restored); *see also State v. Jones*, 185 Ariz. 403, 406, 916 P.2d 1119 (Ct. App. 1995) (holding that where a victim was held in continuous confinement and at no time escaped, there was only one kidnapping); *State v. White*, 127 N.C. App. 565, 571, 492 S.E.2d 48 (1997) (holding that the offense of kidnapping encompassed the entire period of a victim's confinement from the time of the initial act of restraint or confinement until the victim's free will was regained).

Because Cole escaped Classen's restraint and regained her liberty before Classen chased her across the interstate attempting to restrain her again, there were clearly two separate courses of conduct. Accordingly, Classen's convictions for first degree kidnapping and attempted kidnapping do not violate the prohibition against double jeopardy.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Classen next argues that his counsel was ineffective for failing to request a voluntary intoxication instruction, failing to raise a defense of voluntary intoxication, and for failing to request an inferior degree offense instruction on the assault charge from count IV. We hold that Classen's counsel did not provide ineffective assistance for failing to seek a voluntary

intoxication instruction or failing to raise a voluntary intoxication defense, but we hold that counsel provided ineffective assistance for failing to request an inferior degree offense instruction.

A.      *Legal Principles*

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We review ineffective assistance claims de novo. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).

To support a claim of ineffective assistance of counsel, a defendant must show that (1) defense counsel's conduct was deficient and (2) the deficient performance resulted in prejudice. *Estes*, 188 Wn.2d at 457-58. A defense counsel's performance is deficient if it falls below an objective standard of reasonableness and was not based on a tactical decision. *Grier*, 171 Wn.2d at 33. To show prejudice, a defendant must show a reasonable possibility that, but for counsel's purportedly deficient conduct, the outcome of the proceeding would have differed. *Grier*, 171 Wn.2d at 34. Because both prongs must be met, a failure to show either prong will end the inquiry. *State v. Davis*, 174 Wn. App. 623, 639, 300 P.3d 465 (2013).

On direct appeal, we do not consider matters outside the trial record. *State v. Crane*, 116 Wn.2d 315, 335, 804 P.2d 10, *cert. denied*, 501 U.S. 1237, 111 S. Ct. 2867, 115 L. Ed. 2d 1033 (1991). The burden is on the defendant alleging ineffective assistance of counsel to show deficient representation based on the record established in the proceedings below. *State v. McFarland*, 127 Wn.2d 332, 335, 899 P.2d 1251 (1995).

B.      *Failure To Request a Voluntary Intoxication Instruction*

Classen argues that he suffered from amphetamine use disorder and that he used methamphetamine and heroin daily. Classen argues that his counsel rendered ineffective assistance by failing to request a voluntary intoxication instruction.[2] We disagree.

1. *Legal Principles*

To prevail, Classen must show that the trial court would likely have given a voluntary intoxication instruction had his counsel requested it. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 718, 327 P.3d 660 (2014). To obtain a voluntary intoxication instruction, the defendant must show (1) one of the elements of the crime charged is a particular mental state, (2) there is substantial evidence that the defendant ingested an intoxicant, and (3) evidence that his ingestion of an intoxicant affected his ability to acquire the required mental state for the crime. *State v. Harris*, 122 Wn. App. 547, 552, 90 P.3d 1133 (2004). Because each of the five charges required a particular mental state, only the second and third elements are in dispute.

2. *Classen Not Entitled to Voluntary Intoxication Instruction*

Even assuming substantial evidence of intoxication exists, there is insufficient evidence to show that intoxication affected Classen's ability to acquire the required mental state to commit the crimes.

To satisfy the third element, there must be substantial evidence of the effects of the intoxicants on the defendant's mind or body. *State v. Gabryschak*, 83 Wn. App. 249, 253, 921

---

[2] Because no evidence was admitted at trial regarding any type of substance Classen may have ingested, and because Classen makes no argument that he was under the influence of alcohol, we base our analysis on Classen's history of methamphetamine and heroin ingestion.

P.2d 549 (1996). The evidence must reasonably and logically connect a defendant's intoxication with his inability to form the requisite mental state.[3] *Gabryschak*, 83 Wn. App. at 252. A person can be intoxicated and still be able to form the requisite mental state to commit certain crimes. *Gabryschak*, 83 Wn. App. at 254.

It is not necessary to present expert testimony to support an involuntary intoxication defense based on alcohol intoxication. *State v. Thomas*, 123 Wn. App. 771, 782, 98 P.3d 1258 (2004). This is because "[t]he effects of alcohol are commonly known and jurors can draw reasonable inferences from testimony about alcohol use." *Thomas*, 123 Wn. App. at 782. The case law does not say the same about methamphetamine or heroin intoxication. Thus, competent evidence that methamphetamine or heroin affected Classen's ability to form the requisite mental state was required in this case.

At trial, Cole testified that Classen had never acted unusual around her but that on the day of the incident, Classen was "saying a bunch of stuff that didn't really make sense at the time" and called her a "cop" and a "fed." Thomas testified that Classen said "odd" things like, "'I'm going to live my life'" and would count to five and attempt to break free of restraints. RP at 135. Scherer stated that Classen was "talking and talking and talking" and appeared agitated. RP at 234. Sergeant Geddry testified that Classen was making "weird nonsensical statements" and odd noises and appeared to be under the influence. RP at 180.

---

[3] The mental state required to convict on harassment is to "knowingly threaten[]." CP at 45. The mental state required to convict of kidnapping is "intentionally abducts another person with the intent to inflict bodily injury on the person or to inflict extreme mental distress on that person." CP at 50. The mental state required to convict of assault is "intentional touching or striking." CP at 55.

Classen argues that this evidence shows that he lacked the ability to form the required level of culpability to commit the crimes charged. However, Classen failed to provide any evidence about how methamphetamine affected his ability to form the requisite mental states for the crimes. Although there is evidence that Sergeant Geddry testified that Classen appeared to be under the influence, Sergeant Geddry did not testify as to what type of drug or intoxicant he suspected Classen to be under the influence of. Sergeant Geddry also did not testify as to whether methamphetamine or heroin affects a person's ability to form the requisite intent to commit the crimes of kidnapping or assault. Because it is not common knowledge that methamphetamine or heroin can affect a person's ability to form the requisite intent, Classen needed to provide competent evidence to show how his ability to form intent was affected. But here Classen failed to introduce any evidence about the effect methamphetamine had on his ability to form the requisite intent.

Because Classen provided no evidence of how methamphetamine affected his ability to form the requisite mental states, there is no evidence to suggest that Classen lacked the ability to form the requisite mental state to kidnap Cole and assault both Cole and Scherer. Accordingly, the third element is not satisfied.

Classen cannot show that a voluntary intoxication instruction likely would have been given. Consequently, we hold that Classen's counsel did not provide ineffective assistance for failing to seek a voluntary intoxication instruction.

C.      *Failure To Raise Defense*

Classen next argues that his trial counsel failed to raise the defense of voluntary intoxication. Classen argues that the "only plausible defense" to all of the charges against him

14

was his defense that he did not have the ability to form the requisite mental states. Classen asserts that his counsel should have brought forth evidence of the pretrial evaluations to prove that he suffered from amphetamine use disorder, that he reported taking methamphetamine, and that he only remembered waking up in the back of a car on the day of the kidnapping and assault. Because the record is insufficient to support a finding of ineffective assistance of counsel, we disagree.

Even assuming evidence of the pretrial competency evaluation conducted by Dr. Johnson would have been admissible, this evidence does not show that any intoxication affected Classen's ability to form the requisite intent to commit the crimes charged. Dr. Johnson's pretrial evaluation shows only that Classen suffered from amphetamine use disorder.

Though Classen suggests that his counsel should have presented testimony from Dr. Johnson at trial, there is no information in the record regarding what Dr. Johnson would have testified to and there is no evidence that Dr. Johnson would have testified that Classen lacked the ability to form the requisite mental states to commit the crimes due to any drug use.

Although the record contains some evidence regarding Classen's history and diagnosis of amphetamine use disorder, this evidence cannot support a defense of voluntary intoxication under the circumstances. Without expert testimony or some other evidence establishing that methamphetamine use affected his ability to form the requisite intent to commit the crimes, we cannot establish from this record that Classen's defense counsel performed deficiently by failing to present a voluntary intoxication defense.

15

D.     *Inferior Degree Offense Jury Instruction*

Classen next argues that his counsel was ineffective for failing to propose an inferior

degree offense instruction for the lesser crime of fourth degree assault for his crime of assault of

Scherer (count IV).[4]  The State argues that an "all or nothing" approach was a legitimate trial

strategy, and therefore, not deficient.  Br. of Resp't at 35.  We agree with Classen.

1.  *Failure To Request Inferior Degree Instruction*

Where the claim of ineffective assistance is based upon counsel's failure to request a

particular jury instruction, the defendant must show he was entitled to the instruction, counsel's

performance was deficient in failing to request it, and the failure to request the instruction caused

prejudice.  *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012).

An instruction on an inferior degree offense is warranted if:

(1) the statutes for both the charged offense and the proposed inferior degree offense "proscribe but one offense"; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior degree offense.

*State v. Fernandez-Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (quoting *State v. Peterson*,

133 Wn.2d 885, 891, 948 P.2d 381 (1997).  A defense counsel's decision not to request an

instruction on a lesser offense, however, may constitute a legitimate trial strategy.  *See State v.*

*Hassan*, 151 Wn. App. 209, 218, 211 P.3d 441 (2009).

---

[4] The parties' briefs address whether Classen's counsel was ineffective for failing to propose a *lesser included* instruction.  However, because fourth degree assault is an inferior degree offense, we analyze whether counsel was ineffective for failing to request an inferior degree instruction.

Only the third prong (the factual component) is at issue here.[5] A defendant satisfies the factual prong when the evidence permits a jury to rationally find the accused guilty of the inferior offense and acquit him of the greater. *Fernandez-Medina*, 141 Wn.2d at 456. In other words, the defendant must establish that evidence supports a finding that he committed only the inferior degree offense. *Fernandez-Medina*, 141 Wn.2d at 455. We view the evidence in the light most favorable to the party requesting the inferior degree offense instruction. *Fernandez-Medina*, 141 Wn.2d at 456. Our examination of the facts shows that the factual prong is met here. Classen slapped Scherer and immediately ran away, making no attempt to grab or kidnap her or Cole. It is clear that Classen was angry and desired to harm Scherer for telling him to refrain from coming closer to her and Cole. However, viewing the evidence in the light most favorable to Classen, the jury could have found that Classen assaulted Scherer only in the fourth degree, concluding that he was not intending to kidnap Scherer or Cole at the time that he hit Scherer, but rather intended only to harm her. Because the evidence supports that a jury could rationally have convicted Classen of fourth degree assault and acquitted him of second degree assault, Classen was entitled to an inferior degree jury instruction.

2. *Deficient Performance*

When reviewing deficiency, we strongly presume that counsel was effective. *State v. McLean*, 178 Wn. App. 236, 247, 313 P.3d 1181 (2013), *review denied*, 179 Wn.2d 1026 (2014). To rebut this presumption, the defendant bears the burden of establishing the absence of any

---

[5] We examine only the factual component because every degree of assault is a lesser included offense of all higher degrees of assault. *See Fernandez-Medina*, 141 Wn.2d at 454-55.

conceivable legitimate tactic explaining counsel's performance. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

Generally, where an inferior degree offense instruction would weaken the defendant's claim of innocence, the failure to request an inferior degree offense instruction is a reasonable strategy. *Hassan*, 151 Wn. App. at 220. Determining "whether an all or nothing strategy is objectively unreasonable is a highly fact specific inquiry." *Hassan*, 151 Wn. App. at 219. Courts have observed that "'[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.'" *Grier*, 171 Wn.2d at 36 (quoting *Keeble v. United States*, 412 U.S. 205, 212-13, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973)).

Here, we can tell from closing argument that Classen's counsel's failure to request an inferior degree instruction was not a reasonable strategy. Reviewing counsel's closing argument, it did not appear to be his strategy at all. In closing argument, the only statement Classen's counsel made regarding the assault on Scherer was, "[Classen] is guilty of assault. There is no question about that. What kind of assault is it? That's the question." RP at 300. Because the jury was not presented with an inferior degree instruction, counsel's argument amounted to an admission that Classen committed second degree assault on Scherer.

There is no legitimate reason for which counsel would have sought an all-or-nothing approach in an attempt to secure an acquittal where counsel argued that Classen was guilty of at least some "kind of assault." RP at 300. Additionally, the jury, faced with such a statement from counsel was likely to resolve all doubts in favor of convicting Classen of the only assault offense before it, second degree assault. *See Grier*, 171 Wn.2d at 36.

18

Because Classen was entitled to an instruction on the inferior degree offense of fourth degree assault and because his counsel's failure to request the instruction of fourth degree assault was not a legitimate strategy under the circumstances, Classen has shown that his counsel performed deficiently.

3. *Prejudice*

To succeed on his ineffective assistance of counsel claim, Classen must also prove that his counsel's failure to request the inferior degree offense instruction prejudiced him. We hold that Classen has shown prejudice.

A defendant must affirmatively prove prejudice. *Estes*, 188 Wn.2d at 458. To make a determination of prejudice, we consider the totality of the evidence before the jury. *State v. Alcantar-Maldonado*, 184 Wn. App. 215, 233, 340 P.3d 859 (2014). The law generally defines "prejudice," in the setting of ineffective assistance of counsel, as a "reasonable probability" that the result of the proceeding would have been different. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). The accused must show more than the errors having some conceivable effect on the outcome of the proceeding and counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Lui*, 188 Wn.2d at 538-39.

Here, the court instructed the jury that in order to find Classen guilty of second degree assault against Scherer, the jury would need to find that Classen assaulted Scherer with the intent to commit a felony. The State argued that Classen intended to commit felony of kidnapping Sherer or Cole. However, the evidence that Classen intended to kidnap Scherer or Cole at the time he slapped Scherer is weak. Classen made no attempt to grab Scherer or Cole when he

assaulted Scherer. In fact, after he slapped Scherer, Classen immediately ran away. Despite Classen's statement that he would "take" Scherer, the evidence also shows that Classen struck Scherer merely in frustration for her interference. Further, there is a reasonable probability that if the jury was instructed on fourth degree assault, the jury would have convicted Classen only of fourth degree assault rather than second degree assault.

Because he has shown both deficient performance and prejudice, Classen prevails on his claim of ineffective assistance of counsel. Accordingly, we reverse the assault charge in count IV and remand for a new trial on that charge.[6]

We affirm Classen's convictions in part and reverse in part. We reverse Classen's conviction for second degree assault in count IV due to his counsel's ineffective assistance and remand to the trial court for further proceedings.

_____
Worswick, P.J

We concur:

_____
Bjorgen, J.

_____
Sutton, J.

---

[6] Because we reverse one of Classen's convictions, he will ultimately be resentenced. We point the trial court to recent amendments to RCW 36.18.020 providing that the $200 filing fee shall not be imposed on indigent defendants, and leave for the trial court the determination of whether Classen should be assessed the fee. *See* LAWS OF 2018, ch. 269, § 17.