# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57775-5-II |
| Respondent, | |
| v. | |
| MATTHEW KEVIN MALONE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Matthew K. Malone appeals his sentence, arguing that (1) the sentencing court abused its discretion by categorically denying his request for a mental health sentencing alternative (MHSA) under RCW 9.94A.695; (2) defense counsel was ineffective for failing to provide the sentencing court with a mental health evaluation or plan; and (3) the $500 crime victim penalty assessment (CVPA) should be stricken from his judgment and sentence. The State concedes that the CVPA should be stricken.

Because the sentencing court did not abuse its discretion in declining to impose a MHSA and Malone cannot show he was prejudiced by defense counsel's allegedly deficient performance, we affirm Malone's sentence. Also, we accept the State's concession and remand to the trial court with instructions to strike the CVPA from Malone's judgment and sentence.

FACTS

A.  BACKGROUND FACTS

On April 3, 2022, police received two calls: one reporting a hit and run and one complaining about threats made.  The threat caller reported that she saw Malone driving recklessly outside her house and yelling.  At one point, Malone drove straight at the caller.

Meanwhile, an officer responded to the hit and run complaint.  The officer spoke with a man who said he and friend were in the parking lot outside a store when Malone drove into the lot, pointed a gun at them, and demanded they bring him items from the store.  Once the men ran into the store, Malone hit their car and drove away.

Police were also dispatched to a coffee stand, where an officer spoke with three people: one man stated Malone had pointed a gun at him and two friends, and all three thought Malone would shoot them.  Officers were subsequently dispatched to another complaint: a store clerk told officers that Malone had come into the store and threatened to shoot him.

Meanwhile, police pursued Malone, who was driving recklessly "at high speed."  Clerk's Papers (CP) at 11.  During the chase, Malone struck an occupied vehicle.  An officer eventually rammed Malone's car, "disabling it."  CP at 11.  A subsequent search of Malone's car revealed "a loaded .22 caliber revolver" and "a baggy of what [an officer] recognized as methamphetamine."  CP at 12.

Malone was charged with first degree unlawful possession of a firearm, hit and run (unattended vehicle), hit and run (attended vehicle), felony harassment, six counts of second degree assault, attempting to elude a pursuing police vehicle, and violating the Uniform Controlled Substances Act—possession of methamphetamine.  Several counts carried a firearm enhancement,

one of the assault charges was alleged as a crime of domestic violence, and the attempting to elude a pursuing police charge was alleged to be aggravated by Malone's driving against traffic along a highway.

B.    COMPETENCY EVALUATION

Following Malone's arrest, the State moved to have Malone's competency evaluated. Malone acknowledged that he "ha[d] an appointment for mental health" because he might "have some issues." Verbatim Rep. of Proc. (VRP) (Apr. 27, 2022) at 4. The trial court granted the motion for a competency evaluation.

Dr. Thomas LeCompte, a licensed psychologist and forensic evaluator, evaluated Malone. Dr. LeCompte diagnosed Malone with substance abuse disorder (methamphetamine, cocaine, alcohol, psilocybin) and residual symptoms of substance-induced psychosis. During the evaluation, Malone self-reported a prior bipolar disorder diagnosis and stated he took antipsychotic medication for it. Dr. LeCompte concluded that Malone "has [a] minimal . . . history of treatment for mental health concerns and didn't see himself as having an ongoing psychiatric illness." CP at 101. Dr. LeCompte also opined that Malone was competent to stand trial. The trial court found Malone competent to stand trial.

C.    DR. PATTERSON'S EVALUATION

During a pretrial hearing, defense counsel stated there "may be a mental health component" to Malone's case and asked the court for time to determine whether Malone's mental health "played a role in the underlying mens rea . . . in this matter." VRP (July 25, 2022) at 5, 6. Defense counsel also stated that he had reached out to a Dr. Alexander Patterson to have the doctor evaluate Malone's mental health. At a later omnibus hearing, defense counsel told the trial court that Dr.

Patterson had evaluated Malone, but that based on the results of that evaluation and defense counsel's own experience, Malone "would [not] be in a position to defend [himself] based upon . . . any sort of mental health angle." VRP (Oct. 3, 2022) at 24. However, defense counsel stated that "we need to at least get Dr. Patterson's report." VRP (Oct. 3, 2022) at 24. There is no report from Dr. Patterson in the record on appeal.

D.     PLEA AGREEMENT

Malone eventually entered an *Alford* plea[1] to all but the attempting to elude a pursuing police vehicle charge, which the State dismissed. As part of the plea agreement, the State also dismissed all firearm enhancement allegations and the domestic violence allegation.

At the plea hearing, defense counsel stated that "one alternative . . . possibly available to [Malone] is a mental health sentencing alternative." VRP (Oct. 11, 2022) at 4. Defense counsel also stated it would "depend[] on evaluation" and the sentencing "judge's discretion" if Malone were found eligible. VRP (Oct. 11, 2022) at 4. Defense counsel informed the court that he and the State agreed Malone could be "subject to a mental health sentencing alternative evaluation." VRP (Oct. 11, 2022) at 18. The trial court ordered the Department of Corrections (DOC) "to conduct a mental health sentencing alternative evaluation." VRP (Oct. 11, 2022) at 18.

---

[1] "A defendant who enters an *Alford* plea does not admit guilt; rather, he concedes that the State's evidence would likely result in a conviction." *State v. Ice*, 138 Wn. App. 745, 748, 158 P.3d 1228 (2007), *review denied*, 163 Wn.2d 1008 (2008); *see also North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) ("An individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

E.    DOC EVALUATION

Pursuant to the trial court's order, DOC prepared a MHSA report. The report stated that "Malone self-reported he was diagnosed by an [advanced registered nurse practitioner] . . . in 2018 or 2019 with Bipolar disorder" and that the nurse practitioner "prescribed him medication for this disorder, which he recalled only taking . . . for approximately a year." CP at 93. The evaluation also stated that DOC had not received a mental health treatment plan from Malone, nor had Malone provided DOC with "any documentation of meeting with a licensed mental health provider." CP at 94. As a result, DOC was unable to "fully address[]" "[a] monitoring plan within the community." CP at 94.

F.    SENTENCING

In its sentencing memorandum, the State suggested that drug use drove Malone's criminal actions on April 3. *See* CP at 62 ("Given how he reacts to methamphetamine, [Malone] should know to stay away from it."). The State's sentencing memorandum also outlined Malone's criminal history, including a juvenile conviction for third degree assault and an adult conviction for second degree assault. Malone acknowledged that the State's criminal history was "accurate and complete" in his plea agreement. CP at 33.

In Malone's sentencing memorandum, defense counsel agreed with the State that "methamphetamine likely exacerbated [Malone's] wrongful behavior in this series of criminal incidences" and asked the sentencing court to consider a MHSA. CP at 66. Defense counsel also stated that "[s]ocial worker Kara Krenz met with the defendant to prepare a proposed treatment plan that she forwarded to [DOC's] Aberdeen field office." CP at 68. That treatment plan is not

in the record on appeal, and the DOC MHSA report suggests DOC never received a treatment plan from Krenz.

At the sentencing hearing, defense counsel told the court that he had not yet seen DOC's MHSA report but urged the sentencing court to consider a MHSA, stating that Malone had previously been diagnosed "with bipolar and major depressive occurrence." VRP (Nov. 7, 2022) at 31. The State maintained that "this is not a mental health situation," and attributed Malone's criminal actions to his drug use. VRP (Nov. 7, 2022) at 29. Malone addressed the court and requested a MHSA.

The sentencing court rejected Malone's request for a MHSA, stating that it was "a non starter" because Malone had failed to comply with the MHSA statute when he did not provide the court with a mental health plan. VRP (Nov. 7, 2022) at 35. The sentencing court then stated that even if a mental health plan had been provided with the appropriate documentation, it would still not have granted Malone a MHSA: "This is not a mental health situation, really, as much as it is drug use, paranoia, whatever from the meth use that Mr. Malone engaged in on that day." VRP (Nov. 7, 2022) at 36. The sentencing court also noted that Malone had been convicted of a violent offense and had "violence in his history." VRP (Nov. 7, 2022) at 36. Accordingly, the sentencing court concluded that it was "not a good risk for mental health sentencing alternative to put [Malone] back in the community." VRP (Nov. 7, 2022) at 36.

The sentencing court ultimately sentenced Malone to a standard range sentence of 89 months of total confinement for the felony charges. The court also imposed 90 days, 364 days, and 90 days for the misdemeanor crimes of hit and run (unattended vehicle), hit and run (attended vehicle), and unlawful possession of a controlled substance, respectively. The court ordered that

custody on the misdemeanor sentences be served consecutive to one another and consecutive to the felony sentence. The court also found Malone "indigent for the purposes of LFOs" because he "receives an annual income, after taxes, of 125 percent or less of the current federal poverty level." VRP (Nov. 7, 2022) at 40; CP at 74. Finally, the court imposed a $500 CVPA.

Malone appeals.

## ANALYSIS

### A.    LEGAL PRINCIPLES

Generally, a standard range sentence is not appealable. *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). However, a defendant can "challeng[e] on appeal the underlying legal determinations by which the sentencing court reaches its decision." *Id.* We review challenges to a sentence for an abuse of discretion. *State v. Osman*, 157 Wn.2d 474, 482-83, 139 P.3d 334 (2006) (applying abuse of discretion standard of review to trial court's denial of SSOSA).

When a defendant requests a sentencing alternative authorized by statute, the sentencing court fails to exercise its discretion and will be subject to reversal if the court categorically refuses to consider the request. *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005). A sentencing court also errs and is subject to reversal when it mistakenly believes that it does not have the discretion to impose a sentence for which a defendant is eligible. *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 333, 166 P.3d 677 (2007).

There are four eligibility requirements for a MHSA:

> (a) The defendant is convicted of a felony that is not a serious violent offense or sex offense;
> (b) The defendant is diagnosed with a serious mental illness recognized by the diagnostic manual in use by mental health professionals at the time of sentencing;

7

(c) The defendant and the community would benefit from supervision and treatment, as determined by the judge; and

(d) The defendant is willing to participate in the sentencing alternative.

RCW 9.94A.695(1).[2]

Whether to grant a MHSA is entrusted to the sentencing court's discretion:

After consideration of all available information and determining whether the defendant is eligible, the court shall consider whether the defendant and the community will benefit from the use of this sentencing alternative. The court shall consider the victim's opinion whether the defendant should receive a sentence under this section. If the sentencing court determines that a sentence under this section is appropriate, the court shall waive imposition of the sentence within the standard range.

RCW 9.94A.695(4).

B.     NO ABUSE OF DISCRETION

Malone argues that the sentencing court abused its discretion by not meaningfully considering his request for a MHSA and rejecting the request without any information about his mental health or consideration of the statutory factors. We disagree.

Contrary to Malone's assertion, the sentencing court did not categorically deny Malone's request for a MHSA. While the sentencing court initially said a MHSA was "a non starter" because the MHSA statute had not been complied with, the court went on to state that even if it had a mental health plan, it would not grant Malone's request. VRP (Nov. 7, 2022) at 35. Moreover, the sentencing court considered the statutory factors in reaching its decision. For example, the sentencing court stated that "[t]his is not a mental health situation," which is supported by the record because other than Malone's self-reported mental diagnosis, there is no mental health

---

[2] RCW 9.94A.695 was amended in 2024. Laws of 2024, ch. 373 § 1. No substantive changes were made affecting this opinion; therefore, we cite to the current statute.

diagnosis reached by any evaluator during the course of this case. VRP (Nov. 7, 2022) at 36. Furthermore, the trial court reviewed Malone's history of violence and concluded that the community would not benefit from the MHSA. Thus, Malone's argument that the sentencing court categorically denied his MHSA request fails.

Malone also argues that the sentencing court erred because it "incorrectly relied on the violent offense category to conclude Malone was not a good risk to be returned to the community for treatment." Br. of Appellant at 22. Malone appears to conflate the MHSA statute's eligibility requirements—that "defendant is convicted of a felony that is not a serious violent offense or sex offense"—with the statutory requirement that the sentencing court consider "whether the defendant and the community will benefit from the use of this sentencing alternative." RCW 9.94A.695(1)(a), (4).

To the extent Malone argues that the sentencing court misinterpreted the law by saying a violent offense precluded his eligibility for the alternative sentence, he is mistaken. The sentencing court stated, "And plus, it's a violent offense, all right? And he has got violence in his history." VRP (Nov. 7, 2022) at 36. The court followed these two statements with: "So not a good risk for mental health sentencing alternative to put him back in the community. The answer is no." VRP (Nov. 7, 2022) at 36. While one could interpret the sentencing court's violent offense statement as appellant argues, read in context, the court's statements went to the court's evaluation of whether Malone and the community would benefit from supervision and treatment, rather than failing to meet an eligibility factor. Furthermore, nothing in the MHSA statute precludes a sentencing court from considering violent offenses, as opposed to seriously violent offenses, in assessing the benefit or risk to the community where a MHSA defendant is placed. Thus, the

sentencing court did not misapply the law or err by considering Malone's criminal history in its assessment of whether to grant Malone a MHSA.

Finally, Malone argues that the sentencing court abused its discretion by failing to order an examination of Malone in the absence of a mental health plan. The MHSA statute states that the sentencing "court *may* order an examination of the defendant" "[i]f insufficient information is available to determine whether a defendant has a serious mental illness." RCW 9.94A.695(2) (emphasis added). Thus, the sentencing court has the discretion to order a mental health evaluation, but the court is not required to order such an examination.

Here, the sentencing court was not required to order a mental health examination, especially when, other than Malone's self-report, there was no evidence in the record that Malone had a serious mental illness. Malone underwent a competency evaluation and a defense mental health evaluation during the pendency of the case. Consistent with Dr. LeCompte's diagnosis of substance abuse disorder and his conclusion that Malone "has [a] minimal . . . history of treatment for mental health concerns," as well as Dr. Patterson's evaluation that failed to provide Malone with a mental health defense, the sentencing court concluded that "[t]his is not a mental health situation, really, as much as it is a drug use, paranoia, whatever from the meth use that Mr. Malone engaged in on that day." CP at 101; VRP (Nov. 7, 2022) at 36. The court also referenced Malone's history of violence, concluding that, even if there was a mental health plan or other evidence that Malone suffered from a serious mental illness, the court would still conclude that the community would not benefit from granting the MHSA request. Given the circumstances, the sentencing court did not abuse its discretion by not ordering a mental health evaluation.

Accordingly, we hold that the sentencing court did not abuse its discretion by denying Malone's MHSA request.

C.      MALONE DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL

Malone argues that he received ineffective assistance of counsel because defense counsel failed to comply with the MHSA statute by obtaining the necessary mental health evaluation and documentation and depriving the sentencing court of the information necessary to make a reasoned decision. We disagree.

Both the Sixth Amendment to the United States Constitution and article I, section 22 of our state constitution guarantee defendants the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). The right to effective assistance applies at sentencing. *State v. Roach*, 18 Wn. App. 2d 98, 113, 489 P.3d 283, *review denied*, 198 Wn.2d 1022 (2021).

To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) deficient performance by counsel, and (2) that counsel's deficient performance prejudiced him. *Grier*, 171 Wn.2d at 32-33. Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 33. As for the prejudice prong, the defendant must show that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Id.* at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). A claim for ineffective assistance of counsel fails if either prong is not satisfied. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

Here, Malone's claim fails because he cannot show that but for defense counsel's allegedly deficient performance, there is a reasonable probability that the sentencing court would have

granted his request for a MHSA. The sentencing court explicitly stated that even if it had a mental health plan before it, it would not have granted Malone's MHSA request because "[t]his is not a mental health situation" and the community would not benefit from a MHSA sentence for Malone in light of his violent history. VRP (Nov. 7, 2022) at 36. Thus, there is no reasonable probability that but for defense counsel's failure to have Malone evaluated or ensure a treatment plan was provided to the sentencing court, Malone would have received a MHSA. Because Malone cannot carry his burden of showing prejudice, his ineffective assistance of counsel claim fails.

D.      THE CVPA SHOULD BE STRICKEN FROM MALONE'S JUDGMENT AND SENTENCE

Malone argues that the $500 CVPA fee should be stricken from his judgment and sentence because it is no longer statutorily authorized and the sentencing court found Malone was indigent. The State concedes the CVPA should be stricken from Malone's judgment and sentence. We accept the State's concession.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the CVPA on indigent defendants. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048, *pet. for rev. filed*, 102378-2 (2023). Although this amendment took effect after Malone's sentencing, it applies to cases pending on appeal. *Id.*

To strike the CVPA fee, Malone must have been found indigent under the applicable statutory standard. The CVPA is no longer authorized for defendants who are indigent as defined in RCW 10.01.160(3). RCW 7.68.035(4). For purposes of RCW 10.01.160(3), a defendant is indigent if they meet the criteria in RCW 10.101.010(3)(a)-(c). A person is indigent under RCW 10.101.010(3)(c) if they "[r]eceiv[e] an annual income, after taxes, of one hundred twenty-five percent or less of the current federally established poverty level."

No. 57775-5-II

Here, the sentencing court determined that Malone was "indigent for the purposes of LFOs" because he "receives an annual income, after taxes, of 125 percent or less of the current federal poverty level." VRP (Nov. 7, 2022) at 40; CP at 74. Thus, Malone is indigent pursuant to RCW 10.101.010(3)(c). We remand to the sentencing court with instructions to strike the $500 CVPA fee from Malone's judgment and sentence.

CONCLUSION

The sentencing court considered Malone's MHSA request and denied it according to applicable statutory factors and considerations; therefore, the superior court did not abuse its discretion in declining to impose a MHSA. Furthermore, because there is no reasonable probability that the sentencing court would have granted a MHSA, Malone cannot show that he was prejudiced by any alleged deficient performance by his counsel; thus, Malone's ineffective assistance of counsel claim fails. Accordingly, we affirm Malone's sentence, but we remand to the trial court with instructions to strike the CVPA from Malone's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, C.J.

Che, J.

13